# IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **LISA LYNN NORTON**, | ) | Madison County Chancery Court |
|  | ) | No. 40241 |
| Plaintiff/Appellant, | ) |  |
|  | ) | C.A. No. W1999-02176-COA-R3-CV |
| VS. | ) |  |
|  | ) |  |
| **MAX LANE NORTON**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

**FILED**

**January 10, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

_____

From the Chancery Court of Madison County at Jackson.
**Honorable Joe C. Morris, Chancellor**

**Kathryn M. Tucker**, KIZER, BONDS & HUGHES, Milan, Tennessee
Attorney for Plaintiff/Appellant.

**Joe H. Byrd, Jr**., Jackson, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**VACATED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

Plaintiff Lisa Lynn Norton (Mother) appeals the trial court's judgment increasing the child support obligation of Defendant/Appellee Max Lane Norton (Father) from $400 per month to $1200 per month, ordering the Father to contribute $300 per month to an educational trust fund for the parties' minor child, and ordering the Father to pay $2000 of the Mother's attorney's fees. In considering the Mother's petition to modify child support, the trial court found that the Father's financial condition had changed very little since 1988 when the parties entered into a Marital Dissolution Agreement. Nevertheless, based largely upon the Father's agreement to pay more child support, the trial court increased the Father's monthly child support obligation to $1200. We vacate the trial court's judgment based upon our conclusion that the court used the wrong test for determining whether the Mother was entitled to the relief sought in her modification petition.

When the parties were divorced in February 1988, the Father agreed to pay $400 per month to the Mother for the support of the parties' ten-month-old son. In January 1998, almost ten years later, the Mother instituted the present proceedings when she filed a petition to modify the Father's child support obligation. In support of her petition, the Mother alleged "that a significant variance has occurred in the income of Father such that child support should be increased consistent with the guidelines now in effect in the State of Tennessee."

At trial, much of the evidence focused on the Father's income from self-employment for the tax years 1996 and 1997. In 1997, the Father reported $56,702 in gross income. The Father's laundry and car wash business generated gross receipts of $177,202. After taking various business deductions, however, including $93,478 for depreciation, $40,775 for interest payments, and $3503 for car expenses, the Father reported a net business loss of $73,031. The Father also earned income from the rental of commercial and residential real estate. The Father reported gross rental receipts of $271,693. After taking various deductions, however, including $38,509 for depreciation, $95,891 for interest payments, and $3503 for car expenses, the Father reported a net rental income of $71,787. The remainder of the Father's income included $12,847 from insurance sales, $903 in interest, and $21,074 in capital gains.[1]

---

[1]At trial, the Father conceded that, for purposes of these proceedings, this capital gain should be included in the gross income used to determine his child support obligation. We note that the Child Support Guidelines specifically define gross income to include capital gains. *See* Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a) (as revised in 1994); *see also Smith v. Smith*, No.

In 1996, the Father reported a gross income of only $5,192. That year, the Father's laundry and car wash business grossed $180,982 in receipts. After deductions, including $114,163 for depreciation, $19,662 for interest payments, and $3977 for car expenses, the Father reported a net business loss of $54,940. The Father reported gross rental receipts of $245,687 and a net rental income of $58,064. Again, the Father took substantial business deductions, including $36,538 for depreciation, $93,270 for interest payments, and $3820 for car expenses. The Father also earned $1546 in interest in 1996.

The Father testified that, in addition to his $400 monthly child support obligation, he currently was paying $400 per month in private school tuition so that the parties' son could attend the University School of Jackson (USJ). The Father offered to pay $800 per month in child support, plus $200 per month for one-half of the son's USJ tuition, for a total monthly obligation of $1000. The Father also testified that he had established a college fund for his son and that he contributed $100 per month to this fund. The Father took the position, however, that the Mother was not entitled to an additional increase in child support payments because the Father's financial circumstances had not changed substantially since the parties' divorce in 1988.

Since the parties' divorce, the Father had remarried. In addition to the parties' son, the Father had two younger sons by his second marriage. The Father acknowledged that, in an October 1997 financial statement, he reported a net worth of $4.1 million, which included assets of $5.7 million and liabilities of $1.6 million. The Father also acknowledged that he made significant monthly expenditures to support his current lifestyle, including a house payment of between $1700 and $1800, car payments totaling about $1550, and a boat payment totaling about $750 per month. The Father recently installed an in-ground swimming pool at his home at a cost of $18,275, and he took all three of his sons on a trip to Disney World.

As previously indicated, at the trial's conclusion, the trial court entered a judgment increasing the Father's monthly child support obligation from $400 to $1200, ordering the Father

---

01A01-9705-CH-00216, 1997 WL 672646, *3 (Tenn. Ct. App. Oct. 29, 1997) (***no perm. app. filed***) (observing that "the guidelines do not permit the trial court to ignore capital gains in calculating child support").

to contribute $300 per month to an educational trust fund for the parties' son, and ordering the Father to pay $2000 of the Mother's attorney's fees. The trial court's order indicated that $200 of the Father's $1200 monthly child support obligation was to pay for one-half of the son's private school tuition. In explaining how it arrived at the $1200 support figure, the trial court stated that

> [t]he [Father] agreed to increase his child support, and has, in fact, increased his support to eight hundred dollars ($800.00) per month by paying the child's private school tuition. The [Father] further agreed to pay an additional two hundred dollars ($200.00) per month and one-half (½) of the private school tuition.

Although the trial court increased the Father's monthly child support obligation based largely upon the Father's agreement to pay more support, the court specifically found that the Father's financial condition had "changed very little since the parties entered into a Marital Dissolution Agreement" in 1988.

On appeal, the Mother presents the following issues for this court's review:

I.     Whether the trial court erred in finding that a significant variance did not exist.

II.    Whether the trial court erred in its calculation of [the Father's] net income by allowing deductions from gross income for depreciation, excessive business expenses, business losses, and property enhancement debt.

III.   Whether the trial court erred in ordering an increase in the educational trust fund when child support payments were inadequate.

IV.    Did the trial court err in allowing tuition payments as child support?

V.     Is [the Mother] entitled to an award for reasonable attorney's fees and expenses, both at the trial level and on this appeal?

## I. The Significant Variance Test

In 1994, the General Assembly changed the statutory standard for modifying child support orders. *See generally Turner v. Turner*, 919 S.W.2d 340, 342-43 (Tenn. Ct. App. 1995). Prior to July 1, 1994, the trial court could decree an increase or decrease of an existing child support

award "only upon a showing of a substantial and material change of circumstances." T.C.A. § 36-5-101(a)(1) (1991). Effective July 1, 1994, the legislature changed the statutory standard to provide that the trial court shall decree an increase or decrease of an existing child support award "when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e),[2] between the guidelines and the amount of support currently ordered." T.C.A. § 36-5-101(a)(1) (1996) (footnote added).[3] As promulgated by the Department of Human Services, the Child Support Guidelines define a significant variance as fifteen percent (15%) or fifteen dollars ($15.00), depending upon the amount of the current support order. *See* Tenn. Comp. R. & Regs. 1240-2-4-.02(3) (as revised in 1994). A significant variance shall be "at least 15% if the current support is one hundred dollars ($100.00) or greater per month and at least fifteen dollars ($15.00) if the current support is less than $100.00 per month." *Id*.

Under this standard, if the trial court finds a significant variance between the guidelines support amount and the current support amount, the court generally is required to modify the existing child support award by ordering the obligor to pay the guidelines amount. Once the trial court determines the guidelines amount, which is based upon the obligor's salary, a presumption arises that this amount is the correct amount to be awarded. Tenn. Comp. R. & Regs. 1240-2-4-.02(7) (as revised in 1994). If the evidence sufficiently rebuts this presumption, the trial court may decline to award the guidelines amount. *Id*. In that event, however, "the court must make a written or specific finding that the application of the . . . guidelines would be unjust or inappropriate in that particular case." *Id*. Moreover, the court's findings "must state the amount that would have been required under the guidelines and include a justification for deviation from the guidelines which takes into consideration the best interest of the child." *Id*. The trial court also may

---

[2]T.C.A. § 36-5-101(e) (1996).

[3]To a large extent, the "significant variance" test has replaced the "material change of circumstances" test. *See Turner v. Turner*, 919 S.W.2d 340, 342-43 (Tenn. Ct. App. 1995). Nevertheless, the amended statute appears to recognize that a material change of circumstances still may justify a modification of an existing child support award. In addition to the significant variance test, the amended statute permits the trial court to modify an existing child support award if necessary "to provide for the child's health care needs." T.C.A. § 36-5-101(a)(1) (1996). Moreover, we can envision other circumstances that might require a modification of child support. For example, the Child Support Guidelines recognize that an upward adjustment of support may be justified by other factors, such as extraordinary educational expenses or less than average overnight visitation being exercised by the obligor parent. Tenn. Comp. R. & Regs. 1240-2-4-.02(5) (as revised in 1994).

decline to modify the amount, despite the existence of a significant variance, if the variance "resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed." T.C.A. § 36-5-101(a)(1) (1996).

In the present case, we conclude that the trial court erred in failing to apply the significant variance test. In its order, the trial court found that the Father's financial condition had changed very little since the parties entered into their Marital Dissolution Agreement (MDA). This finding suggests that the trial court was applying the "material change of circumstances" test rather than the "significant variance" test. Although the trial court modified the Father's child support obligation, the court apparently did so based largely upon the Father's agreement to increase his obligation.

We further conclude that, if the trial court had properly applied the significant variance test, the court would have found that a significant variance existed between the guidelines amount and the Father's current support obligation. At the time of the modification hearing, the Father's support obligation was only $400 per month per the parties' MDA. As explained in the following section of this opinion, we have determined that the Father's gross monthly income is $14,358. Under the guidelines table in effect at the time of the modification hearing, this gross monthly income figure translated into a monthly child support obligation that was approximately five times the amount of the Father's $400 support obligation. *See* Tenn. Comp. R. & Regs. 1240-2-4 (Table) (as revised in 1998). Inasmuch as the variance between the guidelines amount and the Father's $400 support obligation exceeded fifteen percent (15%), the trial court should have granted the Mother's modification petition by ordering the Father to pay at least the guidelines amount. Accordingly, we vacate the trial court's judgment and remand this case for the trial court to determine the Father's modified child support obligation under the guidelines using the gross monthly income figure of $14,358.

In urging this court to affirm the trial court's judgment in its entirety, the Father points out that the Mother was represented by competent counsel when she executed the MDA that settled all of the issues in the parties' divorce, including the amount of child support the Father was obligated to pay. We note, however, that, as a general rule, a custodial parent may not waive her

minor child's right of support. *See Cagle v. Davis*, 1989 WL 44921, at *3 (Tenn. Ct. App. May 5, 1989), *perm. app. denied* (Tenn. Aug. 7, 1989); *see also Vickers v. Scinta*, No. 01A01-9507-CH-00281, 1995 WL 656881, at *2 (Tenn. Ct. App. Nov. 9, 1995) (*no perm. app. filed*); *Barzizza v. Barzizza*, No. 02A01-9110-CV-00246, 1992 WL 139862, at *6 (Tenn. Ct. App. June 23, 1992) (*no perm. app. filed*); *Pera v. Peterson*, 1990 WL 200582, at *2 (Tenn. Ct. App. Dec. 14, 1990) (*no perm. app. filed*); *State ex rel. Woody v. Morris*, 1990 WL 2867, at *2 (Tenn. Ct. App. Jan. 19, 1990) (*no perm. app. filed*). Moreover, we observe that, even if the Mother's execution of the MDA could be construed as such a waiver, it did not meet the requirements of Tennessee Code Annotated section 36-5-101(h) (Supp. 1998).[4] *See Dwight v. Dwight*, 936 S.W.2d 945, 948 (Tenn. Ct. App. 1996).

## II. Deductions from Father's Gross Income

The Child Support Guidelines permit the obligor, in computing income from self-employment, to deduct reasonable expenses necessary to produce such income. *See* Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a) (as revised in 1994) (providing that "[i]ncome from self-employment includes income from business operations and rental properties, etc., less reasonable expenses necessary to produce such income"). When a business deduction is challenged, the obligor has the burden of showing that the challenged deduction was a reasonable expense necessary to produce his income. *See Howard v. Howard*, No. 03A01-9811-CV-00374, 1999 WL 427596, at *2 (Tenn. Ct. App. June 25, 1999) (*no perm. app. filed*); *accord Ely v. Ely*, No. 03A01-9707-CH-00255, 1998 WL 2510, at *4 (Tenn. Ct. App. Jan. 6, 1998), *perm. app. denied* (Tenn. May 26, 1998).

The Child Support Guidelines require the trial court, in determining the obligor's income from self-employment, to disallow deductions for "[d]epreciation, home offices, excessive promotional, excessive travel, excessive car expenses, or excessive personal expenses" because,

---

[4]Section 36-5-101(h) provides that "[n]othing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties as to support and maintenance of a party or as to child support." T.C.A. § 36-5-101(h) (Supp. 1998). In executing such an agreement, however, "the parties must affirmatively acknowledge that no action by the parties will be effective to reduce child support after the due date of each payment" and, further, "that they understand that court approval must be obtained before child support can be reduced, unless such payments are automatically reduced or terminated under the terms of the agreement." *Id*.

under the guidelines, these expenses are not considered reasonable. Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a) (as revised in 1994). Citing this language of the guidelines, the Mother contends that, in computing the Father's gross income, the trial court should have disallowed the Father's deductions for "excessive" business expenses. During the modification hearing below, the only deductions challenged by the Mother were deductions for car expenses, interest payments, and depreciation. Accordingly, we will limit our review to the specific deductions challenged by the Mother below. *See Barnhill v. Barnhill*, 826 S.W.2d 443, 458 (Tenn. Ct. App. 1991) (holding that appellant waives issue for purposes of appellate review by failing to raise such issue at trial court level).

At trial, the evidence showed that the Father used four different vehicles for business purposes, a 1998 GMC extended cab truck, a 1996 Ford Ranger, a 1998 Porsche Boxster, and a 1998 Ford Expedition. The Father's present wife drove the 1998 Ford Expedition, and the Father drove the other three vehicles. The Father explained that he used the 1996 Ford Ranger and the 1998 GMC extended cab truck in his commercial real estate rental business and his laundry and car wash business. The Father also used the Porsche for business purposes, and he explained that,

> [b]eing that I've got other business interests, there are times
> when I need to be in a car instead of a truck. So I wear different hats
> and different – I mean, it just depends on what I'm having to do.

The Father's CPA defended this practice, and he pointed out that he only allocated sixty percent (60%) of the Father's car expenses as business expenses whereas many of the CPA's clients insisted on deducting between seventy-five percent (75%) and ninety percent (90%) of their car expenses. In 1997 the Father deducted a total of $7006 in car expenses, and in 1996 he deducted $7797.

In light of the foregoing evidence, we conclude that the trial court was not required to disallow the deductions for car expenses claimed by the Father on his tax returns. At trial, the Mother presented the testimony of a CPA who questioned why the Father needed to use three vehicles for a business that had no employees. Other than the question raised by the Mother's CPA,

however, the record contains no evidence that the Father's use of several vehicles in his businesses was unreasonable or that the car expenses he deducted were excessive. Inasmuch as the only evidence on this issue consisted of the unrebutted explanations of the Father and his CPA, we conclude that the Father met his burden of proving that the challenged expenses were reasonable.

We likewise conclude that the trial court was not required to disallow the Father's deductions for interest payments made to banks. In 1996 the Father deducted interest payments totaling $112,932, and in 1997 he deducted $136,666. On appeal, the Mother contends that these deductions should be disallowed for the following reason:

> The allowance or a deduction of investment interest would benefit the obligor parent now by reducing his net income for the purposes of calculating support while building future wealth for the obligor that will become a debt-free asset when he is no longer paying support. If [the Father] is allowed to deduct his investment interest it will significantly reduce his obligation to his child and continue to build future wealth and assets for [the Father] that may never benefit the minor child.

In support of this argument, the Mother cites *Kimble v. Kimble*, No. 02A01-9503-CV-00049, 1996 WL 445272 (Tenn. Ct. App. Aug. 8, 1996) (*no perm. app. filed*).

In *Kimble*, we were faced with the issue of whether a capital expenditure constituted a reasonable and necessary expense that was deductible from the obligor's gross income from self-employment. *Kimble*, 1996 WL 445272, at *2-*5. There, the husband purchased $10,313 worth of office equipment and deducted this expense from his gross income. *Id*., at *2. On appeal, the wife contended that the trial court should have disallowed the deduction for this capital expenditure, and she pointed out that the husband also took a depreciation deduction for the same office equipment. *Id*. In remanding the case for the trial court to reconsider this issue, we observed that, inasmuch as "our own state legislature has not seen fit to either expressly exclude or authorize a deduction for capital expenditures, we believe it within the sound discretion of the trial court to determine when and if expenditures of this type are 'reasonable.'" *Id*., at *5. Citing *Kamm v. Kamm*, 616 N.E.2d 900 (Ohio 1993), we listed the factors for the trial court to consider in determining whether the deduction for capital expenditures was reasonable. *Kimble*, 1996 WL

445272, at *3, *5.[5]

We believe that the Mother's reliance upon the *Kimble* decision is misplaced. Rather than challenging deductions for certain capital expenditures, the Mother is challenging deductions for interest payments that the Father made to various banks relative to capital expenditures. In our view, interest payments should be distinguished from their associated capital expenditures. Interest is "the compensation allowed by law or fixed by the parties for the use or forbearance or detention of money." *Black's Law Dictionary* 729 (5th ed. 1979); *see also Pacific E. Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 960 (Tenn. Ct. App. 1995). In contrast, a capital expenditure is the acquisition cost of a capital asset. *Kimble*, 1996 WL 445272, at *3. We are not convinced that the argument made in *Kimble* relative to capital expenditures can be applied to the interest paid on money borrowed to acquire such capital.

Courts from other jurisdictions also have distinguished between capital expenditures and their associated interest payments in computing a child support obligor's gross income from self-employment. These courts recognize that trial courts, in their discretion, may disallow deductions for capital expenditures and principal payments because such expenditures and payments contribute to the obligor's net worth. In contrast, interest expenses generally constitute reasonable and necessary business expenses because they represent out-of-pocket expenses that are never recouped by the obligor.[6] *See Zakrowski v. Zakrowski*, 594 N.E.2d 821, 824 (Ind. Ct. App. 1992); *Douglas-*

---

[5]These factors included

> (1) the cost of the capital asset compared to the parent obligor's gross income; (2) the cost of the capital asset compared to the net worth of the obligor's business; (3) the existence of a past pattern of acquisition of capital assets as deductions against gross income for child support calculations; (4) the proximity in time of the acquisition of the capital asset to the date of termination of the child support obligation; (5) analysis of the necessity of the capital asset to maintain or increase past or current levels of income as opposed to unnecessary, punitive or overly aggressive expansion of business; and (6) whether the asset is acquired from the current year's income or out of past year(s)' savings.

*Kimble*, 1996 WL 445272, at *3.

[6]An exception to this general rule may arise where the record contains proof that the interest payments are unreasonable or unnecessary, such as "where a parent obtains unusually short-term loans resulting in excessive short-time interest expenditures." *Zakrowski v. Zakrowski*, 594 N.E.2d 821, 824 (Ind. Ct. App. 1992). No such evidence appears in the present

***Hill v. Hill***, 1 S.W.3d 613, 617-18 (Mo. Ct. App. 1999); ***In re Marriage of Nikolaisen***, 847 P.2d 287, 292 (Mont. 1993); ***Barham v. Barham***, 487 S.E.2d 774, 778 (N.C. Ct. App. 1997), ***aff'd***, 494 S.E.2d 763 (N.C. 1998); ***Lawrence v. Tise***, 419 S.E.2d 176, 182 (N.C. Ct. App. 1992); ***Fleenor v. Fleenor***, ___ P.2d ___, 1999 WL 1125189, at *3-*5 (Wyo. 1999). In accordance with these authorities, we hold that the trial court was not required to include the amount of these interest payments in the Father's gross income.

On the other hand, we agree with the Mother's contention that, in computing the Father's gross income for purposes of determining his presumptive child support obligation, the trial court should not have allowed deductions for depreciation. The Child Support Guidelines expressly provide that depreciation is not a reasonable expense. Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a) (as revised in 1994). In computing the Father's gross income, therefore, the trial court was required to disallow any deductions for depreciation. ***See Ely v. Ely***, No. 03A01-9707-CH-00255, 1998 WL 2510, at *4 (Tenn. Ct. App. Jan. 6, 1998), ***perm. app. denied*** (Tenn. May 26, 1998); ***Burchfield v. Nave***, No. 03A01-9308-JV-00271, 1994 WL 13374, at *3-*4 (Tenn. Ct. App. Jan. 21, 1994), ***perm. app. denied*** (Tenn. May 9, 1994); ***accord Sandusky v. Sandusky***, No. 01A01-9808-CH-00416, 1999 WL 734531, at *5 (Tenn. Ct. App. Sept. 22, 1999) (***no perm. app. filed***); ***McGaffic v. McGaffic***, No. 03A01-9707-CV-00286, 1997 WL 772899, at *4 n.1 (Tenn. Ct. App. Dec. 9, 1997) (***no perm. app. filed***); ***Hall v. Hall***, No. 03A01-9701-GS-00030, 1997 WL 404258, at *2 (Tenn. Ct. App. July 21, 1997) (***no perm. app. filed***); ***Craft v. Craft***, No. 01A01-9609-CH-00417, 1997 WL 122809, at *2-*3 (Tenn. Ct. App. Mar. 19, 1997) (***no perm. app. filed***); ***Kimble v. Kimble***, No. 02A01-9503-CV-00049, 1996 WL 445272, at *2 (Tenn. Ct. App. Aug. 8, 1996) (***no perm. app. filed***).

At trial, the evidence of the Father's income from self-employment focused on the tax years 1996 and 1997. In 1996, the Father reported a gross income of $5,192. In calculating this amount, however, the Father's accountant deducted depreciation expenses totaling $150,701. Similarly, in 1997 the Father reported a gross income of $56,702. In calculating this amount, the Father's accountant deducted depreciation expenses totaling $131,987. If the deductions for

_____

case.

depreciation are disallowed, the Father's gross income for 1996 was actually $155,893, and his gross income for 1997 was $188,689, for an average annual income of $172,291.[7] Thus, the trial court should have used a gross monthly income figure of $14,358 to compute the amount of the Father's child support obligation.

### III. Payments to Educational Trust Fund

In its judgment, the trial court ordered the Father to pay $300 per month toward an educational trust fund that he had established for the parties' minor son. The ordered amount was $200 more than the $100 monthly obligation voluntarily assumed by the Father. On appeal, the Mother contends that the trial court erred in ordering the Father to increase his payments to the educational trust fund because the guidelines provision permitting the establishment of such a fund applies only in situations where the obligor's net income exceeds $10,000.

We agree. The Child Support Guidelines contain the following provision relative to requiring an obligor parent to make payments to an educational trust fund:

> The court must consider all net income of the obligor as defined according to 1240-2-4-.03 of this rule. The court must order child support based upon the appropriate percentage to the custodial parent up to a net $10,000 per month of the obligor's income. When the net income of the obligor exceeds $10,000 per month, the court may consider a downward deviation from the guidelines if the obligor demonstrates that the percentage applied to the excess of the net income above $10,000 a month exceeds a reasonable amount of child support based upon the best interest of the child and the circumstance of the parties. ***The court may require that sums paid above the percentage applied to the net income above $10,000 be placed in an***

---

[7]The guidelines require the trial court to establish an initial support award by using the obligor's average income over the previous two years. Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(e) (as revised in 1997). In the present case, the trial court was modifying, rather than establishing, an initial support award. In our view, however, using the Father's average gross income for the previous two years is appropriate in this case because the present action appears to be the first time that the Father's child support obligation has been established under the guidelines and, further, because the Father's income from self-employment varies from year to year. ***See Stacey v. Stacey***, No. 02A01-9802-CV-00050, 1999 WL 1097975, at *4 (Tenn. Ct. App. Oct. 6, 1999) (***no perm. app. filed***).

*educational or other trust fund for the benefit of the child*.

Tenn. Comp. R. & Regs. 1240-2-4-.04(3) (as revised in 1997) (emphasis added).

Citing this provision, this court recently held that "the guidelines provide only that the portion of child support attributable to [the obligor's] net income over $10,000 per month may be paid into an educational trust." ***Barnett v. Barnett***, No. 03A01-9709-CH-00414, 1999 WL 64269, at *5 (Tenn. Ct. App. Feb. 1, 1999), ***perm. app. granted*** (Tenn. June 21, 1999). Thus, the guidelines' provision relating to educational trust funds does not apply unless the obligor's net monthly income exceeds $10,000.

In the present case, we have determined that the Father's gross monthly income is $14,358. Under the guidelines table in effect at the time of the modification hearing, the Father's gross monthly income translated into a net income of less than $10,000 per month. ***See*** Tenn. Comp. R. & Regs. 1240-2-4 (Table) (as revised in 1998). Accordingly, we conclude that the guidelines provision relating to educational trust funds did not apply in this case and that the trial court erred in ordering the Father to pay $300 per month toward such a fund.

### IV. Private School Tuition Payments

We likewise agree with the Mother's argument that any private school tuition payments made by the Father should not reduce the amount he is ordered to pay under the Child Support Guidelines. Inasmuch as the percentage amounts contained therein are minimums only, the Child Support Guidelines permit the trial court to increase a child support award in cases where the minor child has extraordinary educational expenses or extraordinary medical expenses that are not covered by insurance. In that event, the guidelines provide that extraordinary educational or medical expenses "shall be added" to the guidelines amount. Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(c) (as revised in 1997).

Under the guidelines, the payment of private school tuition may justify an upward deviation from the guidelines amount. This court has held, however, that payments for private

school tuition should not "be incorporated into the percentage of the obligor's income paid as support under the Guidelines." ***Dwight v. Dwight***, 936 S.W.2d 945, 950 n.2 (Tenn. Ct. App. 1996).

At trial, the Father testified that, prior to their son's fifth grade year, the parties discussed sending him to private school. During this conversation, the Father expressed his opinion that the son "needs to go to USJ," referring to the University School of Jackson. When the Mother indicated that she could not afford to send the son to USJ, the Father agreed to pay the son's private school tuition of approximately $400 per month. At least one of the Father's children from his second marriage also attended USJ.

Under these circumstances, we conclude that the trial court should have added an appropriate amount to the guidelines percentage to account for the extraordinary educational expense of the parties' son. ***See Barnett v. Barnett***, No. 03A01-9709-CH-00414, 1999 WL 64269, at *5 (Tenn. Ct. App. Feb. 1, 1999), ***perm. app. granted*** (Tenn. June 21, 1999). Accordingly, upon remand, the trial court shall order the Father to pay, in addition to the guidelines amount, the son's private school tuition at USJ.

## *V. Attorney's Fees*

At the trial's conclusion, the Mother's counsel submitted a bill indicating that the Mother had incurred $13,729.11 in attorney's fees in connection with this modification proceeding. In its judgment, the trial court ordered the Father to pay $2000 to the Mother "to be applied to her legal expenses." On appeal, the Mother contends that she is entitled to an additional award of attorney's fees, both at the trial level and on appeal.

The Mother's request for attorney's fees was governed by Tennessee Code Annotated section 36-5-103(c), which provides that

> [t]he plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the

adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

T.C.A. § 36-5-103(c) (Supp. 1998).

The language of this statute is sufficiently broad to authorize an award of attorney's fees in child support modification proceedings. *See Ford v. Ford*, No. 01A01-9611-CV-00536, 1998 WL 730201, at *6 (Tenn. Ct. App. Oct. 21, 1998) (*no perm. app. filed*). When the custodial parent successfully pursues a petition to modify child support, the trial court generally allows the custodial parent to recover her legal expenses if these expenses are reasonable and appropriate. *Id*. This interpretation of the statute is consistent with prior decisions of this court, which recognize "the right of the custodial parent to bring suit to enforce the children's right of support and to recover reasonable attorney's fees from the obligor spouse." *Silverstein v. Silverstein*, 1987 WL 18376, at *5 (Tenn. Ct. App. Oct. 14, 1987) (citing *Graham v. Graham*, 204 S.W. 987, 989 (Tenn. 1918)), *perm. app. denied* (Tenn. Feb. 1, 1988).

Under this statute, however, the prevailing party is not necessarily entitled to an award of attorney's fees. *Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn. 1989). Rather, the language of the statute indicates that such an award lies within the discretion of the trial court. T.C.A. § 36-5-103(c) (Supp. 1998).

In the present case, we conclude that the trial court did not abuse its discretion in awarding the Mother only a portion of her attorney's fees. We note that the Mother's counsel did not attempt to prove these fees either through the testimony of her client or by affidavit. Instead, counsel merely submitted her bill as an exhibit at the trial's conclusion. Moreover, although the Mother contended that the large attorney's fee was necessitated by the complicated nature of the Father's business practices, we believe that the trial court still may have questioned the reasonableness of the $13,729.11 fee requested in this case. In light of the sparsity of the Mother's proof on this issue, we cannot say that the trial court abused its discretion in awarding the Mother only $2000 in attorney's fees.

We agree, however, with the Mother's contention that she is entitled to an additional attorney's fee award on appeal. Accordingly, on remand, the trial court shall award the Mother her reasonable attorney's fees incurred on this appeal.

The trial court's judgment is vacated, and this cause is remanded for the court (1) to determine the Father's child support obligation using the Father's average gross monthly income of $14,358, (2) to order the Father to pay the son's private school tuition, (3) to award the Mother her reasonable attorney's fees incurred on this appeal, and for any other necessary proceedings consistent with this opinion. Costs of this appeal are taxed to Defendant/Appellee Max Lane Norton, for which execution may issue if necessary.

_____
FARMER, J.

_____
HIGHERS, J.

_____
LILLARD, J.