# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### July 2000 Session

## STEPHEN DOUGLAS FILLMORE v. KAREN LEIGH FILLMORE

**Direct Appeal from the Chancery Court for Robertson County**
**No. 8858      Carol Catalano, Chancellor**

---

**No. M1999-00714-COA-R3-CV - Filed September 14, 2000**

---

This appeal arises from a dispute between Appellant Stephen Douglas Fillmore and Appellee Karen Leigh (Anderson) Fillmore[1] regarding the terms of their divorce. The court issued a Final Decree of Divorce, divided the parties' marital property and debts, and awarded Ms. Anderson alimony *in solido*. In addition, the court awarded custody of the one minor child to Ms. Anderson and set a child support amount based on the appropriate guidelines. On appeal, Mr. Fillmore argues that the trial court erred in its valuation of certain marital property, improperly awarded alimony *in solido*, and failed to include as a marital debt a pre-marital debt of Mr. Fillmore. In addition, Mr. Fillmore argues that the trial court improperly calculated his child support obligation based on his current income. We affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J, W.S., and ALAN E. HIGHERS, J., joined.

Jeanan Mills Stuart and W. Allen Barrett, Nashville, Tennessee, for the appellant, Stephen Douglas Fillmore.

Charlotte U. Fleming, Springfield, Tennessee, for the appellee, Karen Leigh Fillmore.

## OPINION

Stephen Fillmore and Karen Fillmore were married on June 1, 1985. During this marriage, they had one child, Hanna Leigh Fillmore, born in February, 1992. Mr. Fillmore filed for divorce in February, 1997 and a final decree was entered on September 22, 1999.

---

[1]Pursuant to the final decree, Appellee's name was restored to her former name of Karen Leigh Anderson.

Prior to the parties' marriage, Mr. Fillmore owned and operated Fillmore Painting, a commercial painting business, as a sole proprietorship. In 1994, the assets of this business were transferred to Fillmore Construction, Inc., a corporation in which Mr. Fillmore and Ms. Fillmore each held fifty percent (50%) of the outstanding shares. In 1997, this corporation made a net profit of seventy-three thousand seven hundred and thirty seven dollars ($73,737) as well as providing salaries for both Mr. Fillmore and Ms. Fillmore in a total amount of thirty thousand nine hundred and seventy seven dollars ($30,977). However, as the result of several of the company's employees making workers' compensation claims, the required workers' compensation premiums increased to a point where it was no longer feasible for the corporation to continue operation. As a result, Mr. Fillmore convinced his mother to establish another commercial painting business which was named CBF.

CBF conducted the same type of painting services provided by Fillmore Construction, though it was to do a much lower rate of out-of-state work. Mr. Fillmore directed all CBF operations and received a salary of one thousand two hundred and twenty-two dollars ($1,222) per month, while his mother held all the required business licenses. CBF leased the now idle equipment from Fillmore Construction, Inc. and obtained Workers' Compensation Insurance for a much lower cost than Fillmore Construction could have under the circumstances. Lease payments of approximately thirty thousand six hundred dollars ($30,600) were paid by CBF to Fillmore Construction over the period of January 1, 1999 to July 15, 1999.

Prior to the birth of the parties' child, Ms. Fillmore was employed as a secretary and later an uncertified technician at a hospital. After their child was born, Ms. Fillmore left her employment against the wishes of her husband to stay at home with their daughter. During the final stage of her marriage, she also attended and completed a program for medical assistants, incurring student loans of approximately six thousand dollars ($6,000). Ms. Fillmore has yet to pass the qualifying examination which would allow her to seek employment as a medical assistant. In 1977, Mr. Fillmore purchased real property in Smith County with twenty-three thousand dollars ($23,000) borrowed from his father for this purpose. This loan was secured by a Deed of Trust with repayment to be made when the property was sold. In 1996, Mr. Fillmore sold this property for one hundred and ten thousand dollars ($110,000) without obtaining a signed release from his father. Mr. Fillmore did not use these proceeds to pay his father, instead, along with money obtained from his wife, he purchased the marital residence as well as additional real estate. In April of 1997, Mr. Fillmore did make one payment of eight thousand five hundred dollars ($8,500) from the parties' joint checking account in partial satisfaction of this debt.

Several points of contention were raised during the divorce hearing. Mr. Fillmore placed the value of Fillmore Construction, Inc. at zero dollars ($0.00) due to the fact that Fillmore Construction ceased to contract its painting services and only produced revenue from leasing its painting equipment to CBF. Ms. Fillmore placed the value of Fillmore Construction at forty-three thousand nine hundred and thirty-three dollars ($43,933). Mr. Fillmore also disputed the granting of alimony *in solido* to his wife for the purpose of paying her student loans. In addition, Mr. Fillmore claimed that his pre-marital debt to his father should be treated as a marital debt because Ms. Fillmore

received some of the benefit of the sale of the property used as security for this debt. Finally, Mr. Fillmore claimed that the court should rely only on his earnings in 1998 to calculate his child support obligation as his earnings were much lower in 1998 than in the two previous years. Ms. Fillmore claimed that this drop in income was due to the nuances of the interactions between Fillmore Construction Inc. and CBF.

In its final decree of divorce, the trial court valued Fillmore Construction, Inc. at forty thousand dollars ($40,000). The trial court also awarded alimony *in solido* to Ms. Fillmore through the requirement that Mr. Fillmore pay all of her outstanding student loans. The trial court refused to rule that the pre-marital debt of Mr. Fillmore to his father for the purchase of the Smith County property was a marital debt, finding instead that it was a separate debt of Mr. Fillmore. Finally, the trial court found that Mr. Fillmore's 1998 income was not dispositive in deciding the amount of child support. Instead, the trial court found that Mr. Fillmore's 1996 and 1997 incomes were more representative of the yearly income of a self-employed manager of a paint contracting firm. As such, the trial court based its determination of child support on the income earned during that period.

The issues on appeal, as we perceive them, are as follows:

I.      Did the trial court properly value Fillmore Construction, Inc. for purposes of its division as marital property?

II.     Did the trial court err in awarding alimony *in solido* to Ms. Fillmore through the requirement that Mr. Fillmore pay her student loans?

III.    Did the trial court properly classify the pre-marital debt to his father incurred by Mr. Fillmore as a separate debt?

IV.     Did the trial court err in refusing to consider the most recent income statements of Mr. Fillmore in the calculation of child support?

To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. *See* Tenn. R. App. P. 13(d). Accordingly, we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); Tenn. R. App. P. 13(d). With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); Tenn. R. App. P. 13(d).

### *Valuation of Fillmore Construction, Inc.*

The trial court valued Fillmore Construction, Inc. at forty thousand dollars ($40,000) and awarded it to Mr. Fillmore. Mr. Fillmore argues on appeal that this corporation is without value

because it has ceased painting operations while Ms. Fillmore contends that the corporation is worth almost forty-four thousand dollars ($44,000).

Mr. Fillmore presented evidence at trial that Fillmore Construction, Inc. has no value. In fact, the last balance statements for Fillmore Construction submitted to the court for January through October of 1998 clearly showed that the company had a total equity of twenty-five thousand nine hundred and forty-nine dollars ($25,949) at the end of this period. In addition, it is clear from the record that Fillmore Construction, Inc. received almost thirty thousand, six hundred dollars ($30,600) in lease payments from CBF during the first six months of 1999.

As this court has stated in the past, "[t]he valuation of an asset is a question of fact, and on appeal there is a presumption that the trial court's valuation is correct." *Smith v. Smith*, 912 S.W.2d 155, 157-58 (Tenn. Ct. App. 1995) (*citing Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987), *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973)). Thus, unless this court discovers that the evidence preponderates against the findings, we must affirm the trial court absent an error of law. *See* Tenn. R. App. P. 13(d). After reviewing the evidence set out above, it is clear to this court that Fillmore Construction had a value greater than zero dollars ($0.00). As such, we cannot say that the evidence preponderates against the trial court's findings on this issue and, thus we affirm its findings.

### *Award of Alimony*

The trial court ordered Mr. Fillmore to pay Ms. Fillmore's six thousand dollar ($6,000) student loan as alimony *in solido*. On appeal, Mr. Fillmore argues that the trial court erred in awarding this alimony to Ms. Fillmore. Mr. Fillmore claims that Ms. Fillmore was not entitled to alimony because she was awarded a life insurance policy in the division of the marital property. He characterizes this award as an inequitable division of property that should bar her from obtaining alimony of any kind. In the alternative, he argues that the ability of Ms. Fillmore to work in her previous type of employment should bar any alimony award.

A trial court has broad discretion in determining the necessity, nature, amount and duration of any alimony awards. *See Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998) (*citing Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989)). Decisions regarding alimony require the careful consideration and balancing of a variety of factors, including those in Tenn. Code Ann. § 36-5-101(d)(1). *See id.* at 683 (*citing Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993)). Those factors are as follows:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of

a party to secure further education and training to improve such party's earning capacity to a reasonable level;

> (C) The duration of the marriage;
>
> (D) The age and mental condition of each party;
>
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
>
> (G) The separate assets of each party, both real and personal, tangible and intangible;
>
> (H) The provisions made with regard to the marital property as defined in § 36-4-121;
>
> (I) The standard of living of the parties established during the marriage;
>
> (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
>
> (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
>
> (L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1999).

It is clear from the record that Mr. Fillmore's first argument is flawed on its face. Mr. Fillmore argued that Ms. Fillmore benefitted from an inequitable division of property through the award of a life insurance policy and was therefore not entitled to any alimony. Careful review of the record shows that the award of the life insurance policy by the court was intended to represent Ms. Fillmore's share of the equity in Fillmore Construction, Inc. As such, its award did not represent an inequitable division of marital funds but instead represented an award given at the court's discretion to compensate Ms. Fillmore for the court's decision to award the entire equity in Fillmore Construction, Inc. to Mr. Fillmore.

Mr. Fillmore's second argument presents a more general approach to the granting of alimony. Simply, Mr. Fillmore states that Ms. Fillmore's ability to work should bar any order of alimony. The trial court refused to award any amount of rehabilitative alimony in its final order. However, the court saw fit to award Ms. Fillmore six thousand dollars ($6,000) in alimony *in solido* through its requirement that Mr. Fillmore pay Ms. Fillmore's school loans.

The preference the legislature has expressed for rehabilitative alimony does not bar the award of other types of support. *See Anderton*, 988 S.W.2d at 682. As previously stated, the trial court has broad latitude in awarding alimony. This decision is a factual determination that requires the balancing of the numerous factors laid down by the legislature. *See Watters v. Watters*, 959 S.W.2d 585, 592 (Tenn. Ct. App. 1997) (*citing Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994)). The trial court in this case made several express findings in its final ruling supporting its decision to award alimony *in solido* to Ms. Fillmore, including a determination that she lacked any available funds to pay her school loans. After a review of these findings, we conclude that the trial court did not abuse its discretion in this matter and, as such, we affirm its award to Ms. Fillmore.

### Classification of Debt

The trial court ruled in its final divorce decree that Mr. Fillmore's pre-marital debt to his father was a personal, separate debt and not a marital debt. As previously discussed, this debt arose from Mr. Fillmore borrowing money from his father to purchase property in Smith County with the requirement that the debt be paid in full upon the selling of the property. When Mr. Fillmore sold this property to purchase the marital home, he did not repay his father for reasons not made clear by the record. One partial payment was made on the debt several years later from a joint account of the parties. On appeal, Mr. Fillmore argues that, since the funds obtained from the selling of the property which secured the debt went into the marital home, the debt should be considered a marital debt.

In divorce cases, the trial court is first required to classify the parties' property as either marital property or separate property. Separate property is returned to the respective party and the marital property is divided in an equitable manner. *See Mansfield v. Mansfield*, No. 01A01-9412-CH-00587, 1995 WL 643329, at \*9 (Tenn. Ct. App. Nov. 3, 1995) (*no perm. app. filed*) (*citing Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988)). The court then classifies the parties' debts as either marital debts or separate debts. Separate debts are distributed to the respective parties, then the marital debt is divided in an equitable manner. *See id.* (*citing Hanover v. Hanover*, 775 S.W.2d 612, 614 (Tenn. Ct. App. 1989)). Thus, a debt must be classified as a marital debt before it can be divided among the parties. Marital debts are defined as those debts "incurred during the marriage for the joint benefit of the parties, or those directly traceable to the acquisition of marital property." *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989) (citations omitted). If either of these conditions are met by a debt, it is considered a marital debt. Turning to the record, it is clear that the debt surrounding the purchase by Mr. Fillmore of his Smith County property was incurred before the marriage. Mr. Fillmore incurred this debt in 1977, eight years before his marriage in 1985. Thus, this debt was obviously not incurred during the marriage and fails to met the first condition. The second condition requires that the debt be directly traceable to the acquisition of marital property. From the record, it is clear and undisputed that the debt was acquired by Mr. Fillmore to purchase property for his own benefit before he was married.

Thus, this debt is directly traceable to the purchase of the Smith County land, an undisputed separate asset. It follows that the debt to purchase this separate asset must be a separate debt. This land was never marital property and any debt arising from its purchase must be considered a separate debt of the purchaser, Mr. Fillmore. The fact that the proceeds of the sale of the property were used to purchase marital property have no bearing on the determination of whether the *debt* was a marital or separate debt. As such, the trial court was correct in its ruling that this debt was a separate debt of Mr. Fillmore and we hereby affirm its decision.

### Child Support Determination

In its initial divorce decree, the trial court based its determination of Mr. Fillmore's child support obligation on his earnings during 1996 and 1997. The trial court found that Mr. Fillmore's 1998 income tax statement did not accurately reflect his earning capacity, instead finding his earlier statements more conducive to the true state of his finances. On appeal, Mr. Fillmore argues that the failure of the trial court to rely solely on his 1998 income tax return led to an over-calculation of his child support obligation.

"Determining the amount of the noncustodial parent's income is the most important element of proof in a proceeding to set child support." *Turner v. Turner*, 919 S.W.2d 340, 344

(Tenn. Ct. App. 1995) (citations omitted).  The determination of a parent's income, as well as any determination of unemployment or underemployment is fact dependent.  A trial court will consider the reasonableness of any submitted income statement in the light of surrounding circumstances.  *See id.*  This determination can include the use of previous years' income tax statements, even if such statements show an income significantly above a later year's statement.  *See Craft v. Craft*, No. 01A01-9609-CH-00417, 1997 WL 122809, at *3 (Tenn. Ct. App. March 19,1997) (*no perm. app. filed*).

Upon a review of the record, it is clear that the trial court carefully considered all of the evidence submitted by Mr. Fuller as to what his actual income was during this period and would most likely be in the future.  After this study, the court found that Mr. Fuller's 1996 and 1997 income tax returns were more representative of Mr. Fuller's earning capacity.  As such, we cannot find that the trial court's calculation of Mr. Fuller's child support obligation in this case represents reversible error.  Thus, this court affirms the trial court's calculation of Mr. Fuller's child support obligation.

### *Conclusion*

Based on the foregoing conclusions, all rulings of the trial court are affirmed in these matters.  Cost on appeal are assessed against Mr. Fillmore and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE