# FILED

**Dec. 15, 1995**

Cecil Crowson, Jr.
Appellate Court Clerk

# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

REBECCA DIANE TURNER (TURPIN),  )
    )
    Plaintiff/Appellee,    )
    )    Warren Circuit
    )    No. 5322
VS.    )
    )    Appeal No.
    )    01-A-01-9503-CV-00080
CHARLES DANIEL TURNER,    )
    )
    Defendant/Appellant.    )

## APPEAL FROM THE CIRCUIT COURT FOR WARREN COUNTY
## AT McMINNVILLE, TENNESSEE

### THE HONORABLE CHARLES D. HASTON, JUDGE

For the Plaintiff/Appellee:

J. Stanley Rogers
Christina Henley Duncan
ROGERS, RICHARDSON & DUNCAN
Manchester, Tennessee

For the Defendant/Appellant:

Marguerite H. Stewart
    CAMP & STEWART
McMinnville, Tennessee

## VACATED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves an acrimonious post-divorce dispute over child support and visitation. After their divorce in 1990, the mother filed several petitions in the Circuit Court for Warren County seeking to hold the father in contempt. The father also filed several petitions to modify his child support because of his inability to pay. This appeal involves the denial of the father's latest petition for modification and the summary suspension of his visitation for not paying child support. We have determined that the evidence preponderates against the trial court's conclusion that the circumstances with regard to the father's income have not changed and that the father's visitation should be suspended. Accordingly, we vacate the order dismissing the father's petition and remand the case for further proceedings.

## I.

Rebecca Diane Turner (now Turpin) and Charles Daniel Turner were married in September 1984. They had two children before separating in May 1987. After an unsuccessful attempt at reconciliation, Ms. Turner filed for divorce in June 1989. On August 15, 1990, the trial court entered a final order granting Ms. Turner the divorce and awarding her custody of the parties' children. The trial court also granted Mr. Turner visitation rights and ordered him to pay $704.13 per month in child support and to pay for the children's medical insurance. The trial court later denied Mr. Turner's post-trial motion to alter or amend the child support award but granted him additional visitation.

In early November 1990, Ms. Turner sought to have Mr. Turner held in contempt for being $2,166.52 in arrears in his child support. Mr. Turner responded with a petition admitting that he was delinquent in his child support payments and requesting a reduction in his child support because he was financially unable to comply with the August 1990 order. Thereafter, Mr. Turner paid all the child support due through November 30, 1990, and agreed to pay an additional $475 for the children's medical expenses. Following a hearing in

January 1991, the trial court entered an order on February 1, 1991, finding Mr. Turner in contempt for failing to pay child support and to obtain medical insurance for his children. The trial court decided not to act on Mr. Turner's petition to modify his child support because "he comes to the Court with unclean hands." In addition, the trial court directed Mr. Turner to begin paying an additional $177 per month to reimburse Ms. Turner for obtaining medical insurance for the children through her group insurance plan at work.

Ms. Turner filed a second petition in May 1991 seeking to hold Mr. Turner in contempt for inappropriate conduct while he was returning her son from visitation. In December 1993, she filed her third contempt petition complaining that Mr. Turner had harassed and abused her and the children and that he was seriously delinquent in his child support obligations.[1] Following an ex parte hearing, the trial court ordered Mr. Turner's arrest and suspended his visitation rights. Mr. Turner responded, as he had in the past, that he was financially unable to meet his child support obligations and again requested the trial court to reduce his child support.

Following a January 1994 hearing, the trial court filed an order on February 14, 1994, finding Mr. Turner in criminal contempt for violating the orders prohibiting him from harassing and abusing Ms. Turner and the children and also finding him in civil contempt for failing to make his child support payments. The trial court sentenced Mr. Turner to ten days for the criminal contempt to be served consecutively with a six-month sentence for civil contempt but determined that Mr. Turner could purge himself of the civil contempt by paying $40,908.86.[2] The

---

[1]Ms. Turner stated that as of November 15, 1993, Mr. Turner was $19,365.19 delinquent in his child support, that he had not paid $3,019.10 in additional medical expenses, and that he had not reimbursed her for $1,796.50 in premiums for the children's medical insurance.

[2]This amount included $20,773.45 in back child support through January 15, 1994, $2,095.50 for medical insurance premiums through January 15, 1995, $3,464.10 for unpaid medical expenses, $11,388.42 to reimburse Ms. Turner for the payment of a second mortgage indebtedness on their former residence, $1,278.86 to reimburse Ms. Turner for a payment to the Internal Revenue Service, $900 to reimburse Ms. Turner for a payment to Citizens Fidelity Bank, and a $1,008.93 payment directly to the Internal Revenue Service.

trial court also ordered that Mr. Turner's visitation would be summarily suspended if he did not make prompt and timely support payments.

The trial court summarily suspended Mr. Turner's visitation before he was released from jail because he failed to pay his child support. Mr. Turner filed another petition in July 1994 requesting modification of his child support and reinstatement of his visitation. On December 20, 1994, the trial court filed an order denying Mr. Turner's petition because he had not demonstrated a material change in circumstances between 1990 and 1994.

## II.

The determinative issue on this appeal involves the trial court's denial of Mr. Turner's petition to modify his child support. The trial court's rationale is not readily apparent. The record, however, indicates that the trial court used the wrong test for determining whether Mr. Turner was entitled to relief and that Mr. Turner might be entitled to relief if the correct test were used.

## A.

We turn first to the proper standard for determining whether an existing child support order should be modified. Prior to July 1, 1994, trial courts could modify existing child support awards "only upon the showing of a substantial and material change in circumstances." *See* Tenn. Code Ann. § 36-5-101(a)(1) (amended 1994). The General Assembly replaced this standard in 1994 by enacting legislation providing that:

> In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance where there is found to be a significant variance, as defined in the child support guidelines . . . between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed.

Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 1995).[3]   In accordance with the amended statute, the Department of Human Services promulgated a public necessity rule defining a "significant variance" as "15% or $15 per month."  *See* 20 Tenn. Admin. Reg. 28 (Aug. 1994).[4]

The amended statute and the public necessity rule took effect on July 1, 1994 and, therefore, applied to Mr. Turner's petition.  The trial court should have used them to determine whether Mr. Turner's child support obligation should be modified.  While the trial court did not explain the basis for its decision, its denial of the petition on the ground that there had been "no change in circumstances" indicates that the trial court applied the wrong test.  By the time of the hearing, the "material change of circumstances" test had been replaced by the "significant variance" test.

## B.

Mr. Turner operates an auto salvage business in McMinnville called Highway 55 Auto Sales and Salvage.  The business is a sole proprietorship, and over the years, Mr. Turner has comingled his personal and business finances.  He pays for his utilities, rent, food, and other items from his business account, and he conceded at the 1994 hearing that he was "living out of the business."  He testified that he is occasionally involved with cash transactions but that he does not possess large amounts of cash that he has not reported to his accountant.

In 1989, the year in which Ms. Turner filed for divorce, his business reported a net profit of $9,857 on gross sales of $229,753.  His business tax returns for that year showed that his inventory cost was $118,431 and that his business expenses were $101,465.  His 1989 adjusted gross income for tax

---

[3]Act of April 21, 1994, ch. 987, § 3, 1994 Tenn. Pub. Acts 1007, 1010.

[4]This rule took effect on July 1, 1994.  A permanent rule with the same substance as the public necessity rule took effect on December 14, 1994.  *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.02(3) (1994).

purposes was a negative $51,956 because of $63,843 in net operating losses being carried forward from 1986 and 1988.

In 1990, the year in which the trial court granted the divorce and ordered Mr. Turner to pay $704.13 in child support, his business's gross sales had fallen to $127,967, and his net profit was a negative $11,721. His inventory cost and business expenses that year were $63,520 and $76,641 respectively.

Mr. Turner's business was on the financial edge. In addition to problems with creditors, he faced assessments from the Internal Revenue Service and other assessments for delinquent payroll taxes. In June 1990, he filed a petition under Chapter 13 of the Bankruptcy Code in order to put his creditors on hold and to reorganize his finances.[5] His business has never recovered beyond its 1989 or 1990 levels. In 1993, his gross receipts amounted to $112,969, and his net profit was $12,114; however, his personal adjusted gross income was only $6,606 because of
net operating loss carry-overs from 1991 and 1992.

Mr. Turner testified at the November 1994 hearing that his monthly income was less than $1,000 and that he was currently able to pay the amount of child support required by the guidelines as well as $25 to $50 per week toward the arrearage. Ms. Turner produced no evidence to the contrary; however, her lawyer argued with some effect that Mr. Turner was a "very street-smart person" and suggested that Mr. Turner had under-reported his income in 1990 and that he was still under-reporting it in 1994.

## C.

The current guidelines require that decisions to modify existing child support orders must be based on a comparison of the amount of the existing support obligation and the amount that the obligation would be if it were based on

---

[5]The bankruptcy proceeding was apparently dismissed in February 1992 because of Mr. Turner's failure to abide by the repayment plan.

the obligor parent's current income. A modification must be made if the existing support obligation varies by fifteen percent or more from the amount that the obligation would be based on the obligor parent's current income. Tenn. Comp. R. & Regs. r. 1240-2-4-.02(3). In cases where the variance equals or exceeds fifteen percent, the guidelines permit refusing to decrease child support in only two circumstances: (1) when the obligor parent is "willfully or voluntarily unemployed or under-employed" and (2) if the variance results from "a previous decision of a court to deviate from the guidelines and the circumstances which caused the deviation have not changed." Tenn. Comp. R. & Regs. r. 1240-2-4-.02(3).

Determining the amount of the noncustodial parent's income is the most important element of proof in a proceeding to set child support. *Kirchner v. Pritchett*, App. No. 01-A-01-9503-JV-00092, slip op. at 4, ___ T.A.M. ___, ___ T.F.L.L. ___ (Tenn. Ct. App. Dec. ___, 1995); Susan F. Paikin et al., *Child Support,* 2 Fam. L. & Prac. (MB) § 33.11[1][a] (1995). This is the case both when setting initial support and when considering requests for modification of an existing support obligation. The noncustodial parent's income is, in fact, doubly important in a modification proceeding because the child support guidelines require the courts to examine the basis for the current support order and the noncustodial parent's current income.

The record contains no information with regard to the basis of the trial court's August 1990 decision to set Mr. Turner's child support at $704.13 per month. Ms. Turner chose not to present proof in the present proceeding. Instead, her lawyer relied on cross-examining Mr. Turner and his accountant and then urged the trial court to consider the "volumes and volumes of proof about the financial affairs of this couple" presented in prior hearings. None of this prior proof was in the record, and thus it would have been inappropriate for the trial court to rely on its memory of the proof in these prior proceedings. *See Rast v. Terry*, 532 S.W.2d 552, 555 (Tenn. 1976); *Myers v. Thomas,* App. No. 01-A-01-9111-CH-00412, slip op. at 4, 17 T.A.M. 15-15 (Tenn. Ct. App. Mar. 25, 1992), *perm. app. denied* (Tenn. Sept. 14, 1992).

The trial court's 1990 decision with regard to child support could have been based on three alternative rationales. The first alternative is that $704.13 could have been the amount required by a straight application of the guidelines based on the number of children to be supported and the evidence concerning Mr. Turner's income at the time. The second alternative is that the trial court could have found that Mr. Turner understated his income in 1990 and, therefore, concluded that his income was more than otherwise shown by the proof. The third alternative is that the trial court could have decided that the facts warranted deviating from the guidelines.

It is unlikely that the original amount of Mr. Turner's child support was based on the proof of his 1989 or 1990 income. Under the October 1989 version of the guidelines, Mr. Turner's monthly gross income would have to have been approximately $3,230 to justify requiring him to pay $704.13 per month to support two children. Mr. Turner apparently produced the same evidence of his income in 1990 that he submitted in 1994. The proof of his income in 1989 and 1990 does not begin to approach $3,230 a month in gross income. Based on his business's net profit, the proof indicates that his income was less than $850 per month.

With regard to the second alternative, the record contains no indication that the trial court based its decision on its belief that Mr. Turner had understated his income or that any of his business expenses were actually income. Ms. Turner suggested at the 1994 hearing that this was the case; however, the 1990 order does not indicate that the trial court disbelieved Mr. Turner's testimony with regard to his income. The trial court did not confirm at the 1994 hearing that it had found Mr. Turner's evidence unbelievable. The present record provides us with no independent basis for concluding that the trial court took Mr. Turner's credibility into consideration when it originally set his child support.

The third alternative is that the trial court could have decided to deviate from the child support guidelines. The version of the guidelines in existence in 1990 required trial courts to "make a written finding that the application of the child support guidelines would be unjust or inappropriate." Tenn. Comp. R. &

Regs. r. 1240-2-4-.02(8) (1989).[6] The 1990 order does not contain written findings that applying the guidelines to Mr. Turner in 1990 would have been inappropriate or unjust. Without these findings, we can only conclude that the trial court did not decide to deviate from the guidelines in 1990.

We have not reviewed the possible rationale for the 1990 order in order to collaterally question its validity. This order and the other earlier orders concerning child support have become final and are the law of the case. Our sole purpose is to demonstrate that the present record contains no evidence that the original child support decision resulted from a finding that Mr. Turner was willfully under-employed or that the facts of the case required deviation from the guidelines. In the absence of these two circumstances, the evidence indicates that there is at least a fifteen percent variance between Mr. Turner's current child support obligation and the amount of his obligation if it were based on the amount of his present income.

**D.**

We hear these cases de novo and are empowered, when necessary, to grant the parties the relief to which they are entitled under the applicable law and the facts of the case. *See* Tenn. R. App. P. 13(b), (d). We cannot, however, grant relief when the record does not contain sufficient evidence upon which to base a reasonable decision. *Kirchner v. Pritchett, supra,* slip op. at 7; *McClain v. Kimbrough Constr. Co.,* 806 S.W.2d 194, 201 (Tenn. Ct. App. 1990). In cases where the record indicates that more satisfactory proof can be presented, we have invoked Tenn. Code Ann. § 27-3-128 (1980) to remand the case for more satisfactory evidence to enable the trial court to render a more appropriate decision. *Haury and Smith Realty Co. v. Piccadilly Partners, I,* 802 S.W.2d 612, 616 (Tenn. Ct. App. 1990).

---

[6]The current regulations have preserved and expanded on the requirement of written findings when a trial court decides to deviate from the guidelines. Tenn. Comp. R. & Regs. r. 1240-2-4-.02(7) (1994).

The present record does not contain sufficient evidence to enable us to determine the amount of Mr. Turner's present income and, therefore, to determine whether a significant variance exists between the amount of his current child support obligation and the amount of support that would be required based on his present income. Accordingly, the denial of Mr. Turner's petition for modification in his child support must be vacated, and the case must be remanded to decide these questions. This hearing should not devolve into a collateral attack on the validity of the August 1990 order or any other order dealing with child support that is now final. The only purposes for this hearing are to determine Mr. Turner's present income and then to determine whether a significant variance exists. Ms. Turner will have the burden of demonstrating which of Mr. Turner's claimed business expenses should be considered income to him for the purpose of calculating child support. If there is a significant variance, then the court should comply with Tenn. Comp. R. & Regs. r. 1240-2-4.-.02(3), unless it makes a written finding to support deviating from the guidelines.

## III.

Mr. Turner also takes issue with the trial court's refusal to permit him to visit his children because he is delinquent in paying his child support. While we are not prepared to say that this sanction is never appropriate, we find that the present facts do not warrant suspending Mr. Turner's visitation rights.

Child custody and visitation decisions should be guided by the best interests of the child. *Luke v. Luke,* 651 S.W.2d 219, 221 (Tenn. 1983); *Contreras v. Ward,* 831 S.W.2d 288, 289 (Tenn. Ct. App. 1991). They are not intended to be punitive. *Pizzillo v. Pizzillo,* 884 S.W.2d 749, 757 (Tenn. Ct. App. 1994); *Barnhill v. Barnhill,* 826 S.W.2d 443, 453 (Tenn. Ct. App. 1991). As a general rule, the most preferable custody arrangement is one which promotes the children's relationships with both the custodial and noncustodial parent. *Rogero v. Pitt,* 759 S.W.2d 109, 112 (Tenn. 1988); *Pizzillo v. Pizzillo,* 884 S.W.2d at 755.

Ms. Turner argues in her brief that the children are adversely affected by Mr. Turner's failure to support them, and thus their best interests will be served by cutting off their visitation with their father unless he begins supporting them. This assertion would have some merit if the record contained proof to substantiate it. We find no such proof. The record, however, contains some support for concluding that the children are not going without basic necessities because Ms. Turner is presently able to provide for their needs.

The courts may deny or condition continuing visitation on the grounds of parental neglect. *See Mimms v. Mimms*, 780 S.W.2d 739, 745 (Tenn. Ct. App. 1989) (parental neglect may be considered in relation to the children's best interests). The denial of visitation is warranted, however, only when the noncustodial parent is financially able to support his or her children but refuses to do so. Since the trial court has not conclusively determined that Mr. Turner is at present willfully refusing to support his children even though he is financially able to do so, we have determined that the order curtailing Mr. Turner's visitation rights should likewise be vacated and that this issue should likewise be addressed and definitively decided on remand. Pending the remand hearing, the trial court should enter an interim order permitting Mr. Turner visitation on whatever terms the trial court determines are just and appropriate.

**IV.**

We vacate the orders denying Mr. Turner's petition for a modification of his child support obligation and denying him visitation and remand the case for further proceedings consistent with this opinion. We also tax the costs of this appeal in equal proportions to Rebecca Diane Turner (Turpin) and to Charles Daniel Turner and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

-11-

_____

SAMUEL L. LEWIS, JUDGE


_____

BEN H. CANTRELL, JUDGE