**IN THE COURT OF APPEALS OF TENNESSEE**

**EASTERN SECTION AT KNOXVILLE**

FILED

**July 21, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| PEGGY ELAINE JACKSON HALL, | ) | BLOUNT GENERAL SESSIONS |
| | ) | |
| Petitioner/Appellant | ) | NO. 03A01-9701-GS-00030 |
| | ) | |
| v. | ) | HON. WILLIAM R. BREWER, JR., |
| | ) | JUDGE |
| MARK RICHARD HALL, | ) | |
| | ) | |
| Respondent/Appellee | ) | MODIFIED |


Karen G. Crutchfield, McCord, Troutman & Irwin, P.C., Knoxville, for Appellant.
Phillip Reed, Maryville, for Appellee.


**O P I N I O N**

INMAN, Senior Judge

A decree entered November 14, 1991 approved a marital dissolution agreement which required the defendant to pay $600.00 per month child support.[1] Two years later, the "child support obligation" was increased to $700.00 per month. This was followed by a motion to again increase the support because of changed circumstances and, by order entered October 8, 1996, the child support obligation was increased to $1200.00 per month beginning June 1, 1996. The recipient mother and custodian appeals, insisting that the increase is inadequate under the Guidelines.[2]

Awards of child support in Tennessee are governed by the provisions of T.C.A. § 36-5-101(e) which provide in summary that the Tennessee Department of Human Services shall establish child support guidelines to be applied by the court as a rebuttable presumption in determining the amount of any child support award. The

---

[1]The marital dissolution agreement refers to the "minor child of the parties" and also to the "children of the parties." It does not reveal the number of children. Neither does the 1994 order. Neither does the 1996 order. From the briefs, we deduce there are two minor children.

[2]The significant variance test rather than a material change in circumstances is the correct standard. *Turner v. Turner*, 919 S.W.2d 340, 342-43 (Tenn. Ct. App. 1995).

Department developed the Tennessee Child Support Guidelines which provide, *inter alia*, definitions of relevant terms and a step-by-step procedure for calculating child support awards. *See* TENN. COMP. R & REG. ch. 1240-2-4-.03.

The procedure for establishing child support awards outlined in the Guidelines requires the following steps:

1) Determination of the amount of the child support obligor's gross income;

2) Determination of the amount of the child support obligor's net income; and

3) Multiplication of the child support obligor's net income by the percentage set by the Guidelines to correspond to the number of children for whom support is being set.

*Id.* The Guidelines set the definitions and methods for calculating each of the above listed steps. *Id.* After each of these steps have been completed, the resulting amount is the child support award under the Guidelines, unless there are reasons for deviation which would make the application of the child support award unjust or inappropriate. T.C.A. § 36-5-101(e)(1) and TENN. COMP. R. & REG. ch. 1240-2-4-.03. *See also Jones v. Jones*, 930 S.W.2d 541 (Tenn. 1996) and *Nash v. Mulle*, 846 S.W.2d 803 (Tenn. 1993).

The first step in calculating a child support award is to determine the child support obligor's gross income. The Guidelines define gross income as follows:

(a) <u>Gross income shall include all income from any source (before taxes or other deductions)</u>, whether earned and unearned and includes but is not limited to the following: wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration, i.e., Title II Social Security benefits, workers' compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony and maintenance and income from self-employment. Income from self-employment includes income from business operations and rental properties, etc., less reasonable expenses necessary to produce such income. Depreciation, home offices, excessive promotional, excessive travel, excessive car expenses or excessive personal expenses, etc., should not be considered reasonable expenses. "In kind" remuneration must also be imputed as income, i.e., fringe benefits such as a company car, the value of on-base lodging and meals in lieu of BAQ and BAS for a military member, etc.

TENN. COMP. R. & REG. ch. 1240-2-4-.03(3)(a). Once the gross income of the obligor

is determined, this amount is then used as a basis for determining the obligor's net income. The method for calculating net income under the Guidelines is:

> (4) Net income is calculated by subtracting from gross income of the obligor's FICA (6.2% Social Security + 1.45% Medicare for regular wage earners and 12.4% Social Security + 2.9% Medicare for self employed, as of 1991, or any amount subsequently set by federal law as FICA tax) the amount of withholding tax deducted for a single wage earner claiming one withholding allowance (copies of appropriate table will be provided to courts with guidelines), and the amount of child support ordered pursuant to a previous order of child support for other children . . . .

TENN. COMP. R. & REG. ch. 1240-2-4-.03(4). The net income is then multiplied by the Guidelines percentage that corresponds to the number of children to be supported, resulting in the amount of the child support award under the Guidelines without regard to any deviation. TENN. COMP. R. & REG. ch. 1240-2-4-.03(4) &(5).

The appellees' income tax returns and personal and business banking records for 1995 were filed in evidence. His net income from veterinary practice in 1995 was $71,030, after claiming $5,400.00 for depreciation.[3] and $9,169.00 for amortization costs.[4] He also reported a capital gain of $3,692.00 and interest income of $869.00. He paid alimony of $3500.00 and self-employment tax of $9,491.00

The trial judge found the appellee's 1995 income was $63,000.00 and ordered him to pay $1200.00 monthly, which extrapolates to a net income of $45,000.00. We are unable to determine the precise derivation of the latter amount.

The appellees' bank records reveal that he deposited $80,000.00 to his personal account in 1995. The appellant argues that the trial judge failed to consider these funds in arriving at the appellee's gross income. We are unable, from the meager record, to make an independent determination of the source of these funds, but presume they were generated primarily from the veterinary practice and hence accounted for.

---

[3]Which includes $2,129.00 for a computer, the entire cost of which was expensed in 1995 and $3,264.00 depreciation for residential rental property and nonresidential real property, not otherwise categorized, and not explained.

[4]Not explained, but presumably separate capital expenditures.

Our review is *de novo* on the record accompanied by the presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. T.R.A.P. Rule 13(d).

We note that the non-inclusion of the amortization costs in gross income was not addressed upon the trial, and we will not notice it further except to observe that the Guidelines are silent on the subject, which impels us to the conclusion that such costs should be carefully scrutinized.

With respect to the amount of $5,450.00 claimed for depreciation, the Guidelines expressly provides that depreciation is not a deductible expense for a self-employed person for purposes of calculating child support, and this deduction from net income must be disallowed. The issue of deviation was broached, and we conclude that the trial judge merely overlooked the non-inclusion of depreciation in computing net income.

The appellee had a capital gain of $3592.00 in 1995. The appellant argues that the Guidelines clearly require this amount to be included in income. The point is somewhat nebulous, since a capital gain is irregular income and, in this case, was included in the marital estate. We held in *Eubank v. Eubank*, No. 02A01-9110-CV-00242 (filed at Jackson, October 20, 1992) that the Guidelines do not require the inclusion in gross income of isolated capital gains transactions and adhere to that ruling.

The appellant complains of the refusal of the trial judge to order the increase effective upon the filing of the motion therefor. We think this request is meritorious in a limited context.

The appellee was paying only $700.00 per month, which presupposes a net income of about $25,000.00  As a professional man, and otherwise, he was aware of the requirement that he should pay 32% of his net income for the support of his children, and that his net annual income was substantially in excess of $25,000.00. The delay in the adjustment of the support requirement appears to have been attributable equally to the parties.

From the appellant's business and interest income of $71,899.00 there should be subtracted alimony payments of $3500.00, self-employment tax of $9,491.00 and income tax of $15,530.00, leaving a difference of $43,378.00, to which should be added $5400.00. For child support purposes, the appellee's income is found to be $4,065.00 monthly, 32% of which, or $1300.00 per month, must be paid as child support.

The record does not reveal the appellee's income during the last quarter of 1994 and, for this reason, the increase will be retroactive to January 1, 1995.

The appellant complains of the disallowance of discretionary costs and of the limited award of attorney's fees. We have carefully considered these issues and found no abuse of discretion. *Threadgill v. Threadgill*, 740 S.W.2d 419 (Tenn. Ct. App. 1987).

The judgment is modified to award child support in the amount of $1300.00 monthly, with the excess over $700.00 retroactive to January 1, 1995. Costs are assessed to the appellee, and the case is remanded for all appropriate purposes.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Don T. McMurray, Judge


_____
Charles D. Susano, Jr., Judge