# IN THE COURT OF APPEALS OF TENNESSEE,
## AT NASHVILLE
September 4, 2001 Session

## MELISSA COMBS CRANSTON V. EDWARD SCOTT COMBS

**Appeal from the Chancery Court for Montgomery County**
**No. 95-11-0055Carol Catalano, Chancellor**

_____

**M2000-002101-COA-R3-CV - Filed January 15, 2002**
_____

DON R. ASH, SP.J., dissenting.

This court has often noted one of the most difficult-if not the most difficult-task we are called upon to face is the determination of the proper residential parenting time of children in domestic relations cases. The protection of the welfare and best interests of these children, who are innocent victims of divorce, is paramount. Our decisions regarding parenting should never be used to punish or reward the parents. As a general rule, the most preferable custody arrangement is one that promotes the relationship of the children with both the custodial and non-custodial parent. Turner v. Turner, 919 S.W.2d 340, 346 (Tenn.App.1995).

Since stability is important to any child's well being, the courts have emphasized the importance of continuity of placement in custody and visitation cases. Continuity, however, does not trump all other considerations. Gaskill v. Gaskill, 939 S.S.2d 626, 630 (Tenn.App.1996). T.C.A. section 36-6-101(a)(1) specifically empowers courts to modify custody "as the exigencies of the case may require." However, a split among the sections of this court regarding the proper test governing the modification of custody or visitation arrangements has created considerable confusion and frustration in this area. A clarification of the position of the respective sections with respect to custody modifications may be illustrative.

The eastern section of the Tennessee Court of Appeals has noted the trial court in a modification proceeding must find a material change in circumstances compelling enough to warrant a change of custody. The eastern section went on to indicate, "it is only that behavior of a parent which clearly posits or causes danger to the mental or emotional well-being of a child (whether such behavior is immoral or not), which is a sufficient basis to seriously consider the drastic legal action of changing custody. Thompson v. Thompson, 1999 Tenn.App. LEXIS 700, No. 03A01-9809-CH-00308; Musselman v. Acuff, 826 S.W.2d 920, 922 (Tenn.Ct.App. 1991).

The western section has held that a custody decision may only be altered where there has been a change of circumstances that requires a modification to prevent substantial harm to the child. Williams v. Williams, No. 01A01-9610-CV-00468 WL 272458, at *6(Tenn.Ct.App. May 23, 1997); Greene v. Greene, No. 03A01-9503-CV-00091 WL 165098, at *4 (Tenn.Ct.App. Apr. 9, 1996). The *Williams* court also cited *Musselman* for the proposition that "it is only that behavior of a parent which clearly posits or causes danger to the mental or emotional well-being of a child (whether such behavior is immoral or not), which is a sufficient basis to seriously consider the drastic legal action of changing custody. Williams, 1997 WL 272458 at *6.

In contrast, the middle section of this court previously held: "the courts will change a custody or visitation arrangement if the party seeking the change proves (1) that the child's circumstances have changed in a material way that could not reasonably have been foreseen at the time of the original custody decision, *see* Smith v. Haase, 521 S.W.2d 49, 50 (Tenn. 1975); McDaniel v. McDaniel, 743 S.W.2d 167, 169 (Tenn.Ct.App. 1987) [*modified*, 1987 WL 15543, at *1 (Tenn.Ct.App. Aug. 7, 1987], and (2) the child's interests will be better served by changing the existing custody or visitation arrangement. *See* Hall v. Hall, No. 01A01-9310-PB-00465, 1995 WL 316255, at *2 (Tenn.Ct.App. May 25, 1995. Solima v. Solima, No. 01A01-9701-CH-00012, 1998 WL 726629, at **2-3 (Tenn.Ct.App. Oct. 16, 1998). .

The majority's holding today retains the material change of circumstance test utilized by the middle section of this court. I am troubled by language in dicta referring to "substantial harm" to the children that may be misinterpreted as an expansion of the standard for modification of custody. It is undisputed the best interests of the child should be the paramount concern when evaluating child custody. I am concerned this language may ironically frustrate the best interests of the child in a situation where the court finds there has been a material change of circumstances indicating a modification of custody is in the best interests of the child, yet falling short of the "substantial harm" standard. I believe the current facts present such a conundrum.

Ms. Cranston is mistaken in her argument that the Chancellor erred in finding a material change of circumstance. Ms. Cranston ironically argues her refusal to respect the court ordered visitation of Mr. Combs does not constitute a changed circumstance because her interference should have been anticipated as retaliation for the father's child support delinquency. For purposes of clarification, it is important to note the **trial court** may only suspend the visitation rights of a non-custodial parent due to child support delinquency where there has been a conclusive determination that the non-custodial parent willfully refused to support the children even though they were financially able to do so. Turner v. Turner, 919 S.W.2d 340, 346 (Tenn.App.1995). Given the significant restrictions on the ability of the trial court to suspend a non-custodial parent's right to visitation, it should be obvious the custodial parent clearly lacks the authority to unilaterally suspend the visitation rights of the non-custodial parent.

T.C.A. § 36-6-106(10) (Supp. 1998) specifically considers the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the child and the other parent as a consideration for placement. Case law in this state also speaks of the importance of

2

fostering a positive relationship with the other parent. Brooks v. Carter, 1999 Tenn. App. LEXIS 64 (Ct.App.1999). See also Bowers v. Bowers, 956 S.W.2d 496, 498 (Tenn. App. 1997) (affirming award of primary custody to father where evidence showed that mother continually attempted to shut father out of child's life, whereas father encouraged child to show affection to mother and attempted to maintain relationship with mother's family. Ms. Cranston's conduct in this case is antithetical to the intent of our case law and T.C.A. § 36-6-106(10). Her behavior also constitutes contempt of a judicial order. I believe this court's refusal to consider the custodial parent's interference with visitation a material change of circumstances condones this inappropriate behavior and sets a harmful precedent for the state of Tennessee.

The Tennessee Court of Appeals affirmed the trial court's modification of custody where the mother's denial of the father's visitation rights was found to be a substantial change of circumstance in Wilson v. Title, No. M2000-00115-COA-R3-CV (25 TAM 40-14). The trial court's re-evaluation of joint custody has also been affirmed where the recalcitrance of one or both parties rendered the prior arrangement unworkable and indicated that this change of circumstances was not anticipated by the former decree. Dodd v. Dodd, 737 S.W.2d 286 (Tenn.App.1987). "The troublesome interference" of one parent has also been recognized as behavior that negatively impacts the welfare of the children. Dalton v. Dalton, 858 S.W.2d 324, 326 (Tenn.App.1993). In *Dalton*, the father engaged in unseemly language in public functions involving the children, instructed the children that they did not have to obey their mother because he had joint custody and control, and entered the mother's home without authorization. The trial court believed this behavior was sufficient to modify the original custody decree.

Ms. Cranston's behavior is also troubling. The Chancellor determined a deliberate pattern of interference with Mr. Combs' court ordered visitation and telephone communication with the children by Ms. Cranston, a refusal to communicate with the father regarding changed family plans, and a failure to offer make-up visitation. The judgment for divorce entered May 17, 1996 awarded the sole custody of the parties' two minor children to the mother and provided the father with reasonable visitation with at least 24 hours notice to the mother. Mr. Combs filed a petition seeking a change of custody on January 7, 1997, alleging that this arrangement was unworkable due to the mother's refusal of visitation and unmonitored telephone communication. In response to Mr. Combs' concerns, the trial court entered a revised visitation agreement on September 15, 1997 that specifically outlined the father's visitation as follows: the father would have the first and third weekend of each month, Friday at 6:00 to Sunday at 6:00; Thanksgiving in even years; Christmas in odd years; Father's day; July 4th in odd years; two weeks in July and the first week of August each summer; alternate spring breaks beginning with the spring of 1998. The trial court specifically noted that the parties must communicate with each other in scheduling and rescheduling visitation, and that it shall be the responsibility of the mother to keep the natural father apprised of any and all school and extracurricular activities in which the children are involved.

This agreement has also proven unworkable due to the obstinacy of Ms. Cranston. The Chancellor's ruling identified several specific instances of interference and misconduct on the part of Ms. Cranston, including depriving Mr. Combs of three full weeks of summer visitation in 1998

3

and 1999, spring break in 1998, and the son's visitation on July 4, 1999. The Chancellor also considered two instances in which Mr. Combs was denied his regular visitation due to the son's attendance at a football banquet, and later when Ms. Cranston took the daughter to a TPAC performance. The testimony indicated Ms. Cranston often allowed the children to determine if scheduled visitation with their father would occur, and she abdicated her responsibility to communicate with Mr. Combs regarding changes affecting scheduled visitation through instructing the children to call their father. Furthermore, Ms. Cranston has never offered make-up visitation for these missed opportunities with Mr. Combs and his children. Testimony before the Chancellor revealed that Ms. Cranston interfered with Mr. Combs' telephone communication with the children through either monitoring the conversations (in disregard of the visitation agreement), erasing telephone messages left by Mr. Combs for the children, and refusing to call the children to the phone to speak with their father even though the children were present. Testimony also included instances in which Ms. Cranston made profane and/or derogatory comments about Mr. Combs in front of the children. The Chancellor ultimately held Ms. Cranston's failure to comply with the visitation agreement is a material change of circumstances that risked substantial harm to the children through compromising the father-son and father-daughter relationship. The Chancellor's modification of custody was clearly warranted under these facts.

Custody and visitation determinations often hinge upon subtle factors, including the parents' demeanor and credibility. Accordingly, appellate courts are reluctant to second-guess a trial court's decisions. Trial courts are normally in the best position to evaluate the credibility of the witnesses since they have seen and heard the witnesses testify. Thus, a trial court's determination of credibility is entitled to great weight in this court. Trial courts must be able to exercise broad discretion in these matters, but they still must base their decisions on the proof and upon the application of the appropriate principles of law. Gaskill v. Gaskill, 939 S.S.2d 626, 630-633 (Tenn.App.1996). After reviewing the record, I believe the Chancellor has satisfied this standard and her determination should be upheld.

Furthermore, where individual instances of misconduct may be held to be an insufficient change of circumstance to modify custody, the same misconduct may, under proper circumstances, be added to subsequent conduct in order to accumulate an aggregate total of misconduct that could justify modification of custody. Wall v. Wall, 907 S.W.2d 829, 832 (Tenn.App. 1995). Ms. Cranston's behavior, in the aggregate, constituted a material change in circumstances that negatively impacted the welfare of the children through compromising the important relationship with the non-custodial parent. I believe this interference with visitation justifies a modification of custody.

Thus, after concluding a material change in circumstance existed, we must proceed to consider the Chancellor's application of the comparative fitness analysis. The Chancellor conceded that although both parents were fit, the best interests of the children suggested Mr. Combs should be awarded custody in order for the children to have an opportunity to establish a relationship with their father. Ms. Cranston mistakenly complains that the trial judge erred in applying the comparative fitness analysis by focusing predominately upon the testimony of Mr. Combs. The issue of witness credibility is reserved exclusively for the trial judge in a case tried without a jury and may

4

not be reviewed by an appellate court. A decision of the trial court that hinged upon witness credibility will not be reversed unless there is found in the record clear, concrete and convincing evidence, other than the oral testimony of the witnesses, to the contrary. Airline Constr. V. Barr, 807 S.W.2d 247, 264 (Tenn.Ct.App.1990). The record in this matter does not contain any evidence other than the oral testimony of the witnesses with which the appellate court may reverse the decision of the Chancellor. Thus, I must conclude that the Chancellor did not err in the application of the comparative fitness analysis.

The Chancellor's determination that the Plaintiff/Appellant's inappropriate behavior and pattern of visitation interference constituted a material change in circumstances as well as the application of the comparative fitness analysis should be affirmed.

_____
DON R. ASH, SPECIAL JUDGE