IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2008

# STATE OF TENNESSEE, EX REL. KATHY D. FLORES
# v. LAWRENCE RALPH

**Appeal from the General Sessions Court for Warren County**
**No. 6373     Larry G. Ross, Judge**

---

**No. M2007-00881-COA-R3-CV - Filed March 12, 2008**

---

The State filed a petition for contempt against a man who had fallen far behind in his child support obligation, in part because he was incarcerated for a large portion of the time. The trial court reduced the arrearage to judgment in the amount of $28,632, found the father in contempt for failing to pay while he was not in jail, and sentenced him to serve 90 days in jail. Because the State did not prove beyond a reasonable doubt that the father had the ability to pay child support during the periods in question, we vacate the sentence for criminal contempt. We also vacate the arrearage judgment and remand this case to the trial court for reconsideration of arrearage.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Vacated**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

C. Brent Keeton, Manchester, Tennessee, for the appellant, Lawrence Ralph.

Robert E. Cooper, Attorney General and Reporter, Warren A. Jasper, Assistant Attorney General, for the appellee, State of Tennessee, ex rel. Kathy D. Flores.

**OPINION**

This case began when the State of Tennessee, on behalf of Kathy D. Flores, filed a Petition for Contempt against Lawrence Ralph asking the court to enforce an existing child support order under which Mr. Ralph was to pay support for his two minor children. The petition alleged that Mr. Ralph had failed and refused to pay as ordered and was in willful contempt. The petition requested: (1) that Mr. Ralph be found in criminal or civil contempt and "punished accordingly;" (2) that a judgment for arrears be entered against Mr. Ralph; (3) that an income assignment be entered; and (4) that the court direct that all of Mr. Ralph's licenses be revoked, suspended, or denied renewal.

The trial court granted much of the relief requested. For purposes of this appeal, most relevant are the trial court's (1) finding that Mr. Ralph was in willful contempt and sentencing him to 90 days in jail for that contempt and (2) reducing arrearages to a judgment of $28,632 and holding that Mr. Ralph was to "remain responsible for any arrearages that have accumulated during periods of time where [Mr. Ralph] was incarcerated," in effect denying an earlier filed motion to reduce child support.

## I. BACKGROUND

Lawrence Ralph is a divorced father of two children who was ordered to pay child support of $40 per week.[1] On October 9, 1996, Mr. Ralph's attorney filed a motion to reduce child support on the ground that he was incarcerated in the Warren County Jail, and had no present ability to meet his child support obligations. That motion was never heard, and no order was ever filed reducing the obligation.[2]

On December 7, 2006, the State filed a petition for contempt against Mr. Ralph in the General Sessions Court of Warren County. The petition declared that he had failed to comply with the support order and asked the court to find that he was guilty of willful civil and/or criminal contempt and to punish him accordingly. Mr. Ralph filed a uniform affidavit of indigency and asked the court to appoint an attorney for him, which it did.

Mr. Ralph's attorney filed an answer in which he stated that his client had been incarcerated a number of times since the support order was entered, that he was not currently employed, that he had problems obtaining employment because of his criminal record, and that he had filed an application for Social Security Disability benefits due to a number of medical and psychiatric conditions. The answer asserted that Mr. Ralph should not be forced to pay child support for the

---

[1]The record on appeal does not include a copy of the child support order upon which the contempt petition was based. The petition alleges that the amount due under the previous support order was $50 per week, but the witness who testified about the history of payment and nonpayment stated the original amount was $40 per week, but that at some unidentified time an amount for payment of arrearage had been added, bringing the weekly obligation to $55.

[2]The copy of the hand-written motion found in the record is stamped as filed on October 9, 1996. It is signed by Bernard Smith as Mr. Ralph's attorney of record, but does not include Mr. Smith's BPR number, nor a Certificate of Service. At the hearing on the contempt petition, there was no dispute as to Mr. Smith's status.

time he was incarcerated because he had no income and no ability to pay and also that he should not be liable for full support during other times when he could not find regular employment.

The hearing on the petition was conducted on April 2, 2007. Mr. Ralph was brought to court from the Warren County Jail, where he had been held for about a month on a pending charge of manufacture of methamphetamine. He testified, as did his former wife. Susan Miller, who was only identified by name with no description of her role, testified as to the amount of Mr. Ralph's arrearage. The 25 page transcript of the hearing indicates that it was quite brief.

The proof showed that during the years between the entry of the child support order and the contempt hearing, Mr. Ralph spent most of his time behind bars, either pre-trial or serving time for a variety of offenses including theft, burglary, and drug sales. When he got out, he applied for jobs at several businesses, but a background check usually resulted in rejection of his application. He worked occasional odd jobs when he could, and he made child support payments from time to time. The State acknowledged a total of $2,585 in such payments, but calculated a total arrearage from October 20, 1995, through March 31, 2007, of $28,632.

During closing arguments, the State argued that while the trial court could not hold Mr. Ralph in contempt for failing to pay child support during his incarceration, it should hold him in contempt for every payment of child support he missed while he was free. Mr. Ralph's attorney argued that a finding of contempt was not appropriate against an individual who was unable to find work because of his criminal record. In its ruling from the bench and its subsequent order, the court held that despite Mr. Ralph's difficulties finding work after his release, a holding that he should be thereby be excused from his obligation could set a dangerous precedent, for, "[i]f we ever start that, no one will ever pay any child support, anybody that has ever been in jail."

The court accordingly reduced Mr. Ralph's arrearage of $28,632 to judgment and ordered that it be repaid at a rate of $15 per week, increasing his total weekly obligation to $55.[3] The court also found Mr. Ralph to be "in willful and deliberate criminal contempt" because of his failure to pay child support and sentenced him to serve 90 days in jail, with the sentence to run consecutively to any sentences stemming from the pending criminal charges against him. This appeal followed.

## II. CRIMINAL CONTEMPT

In its final order, the trial court held that Mr. Ralph "is in willful and deliberate criminal contempt in that [he] is able-bodied and has had the ability to comply with the court's orders and has willfully refused to do so." Statements by the trial court at the close of the hearing demonstrate that the contempt holding was not based on any failure to pay while Mr. Ralph was incarcerated. At that time, the court stated, " Obviously, he can't pay while he's incarcerated, and obviously, the law is that you can't find someone in contempt because they are in jail . . . ."

---

[3]As indicated earlier, Susan Miller testified that $15 a week for arrearages had previously been tacked on to Mr. Ralph's $40 per week child support obligation.

Consequently, the contempt was based on Mr. Ralph's failure to pay support for some period(s) of time while he was not incarcerated. Again, at the close of the hearing, the trial court made it clear that it did not consider difficulty in getting and keeping employment, due according to Mr. Ralph to his frequent incarcerations, to be a justification for failure to pay support. As we noted above, Mr. Ralph testified that his criminal history has made it very difficult for him to find gainful employment. He argued that, as a result, his failure to pay child support can not be considered willful.

Our courts may impose contempt sanctions for willful disobedience of "any lawful writ, process, order, rule, decree, or command." Tenn. Code Ann. § 29-9-102(3).[4] Because of the punitive purpose of proceedings for criminal, as distinguished from civil, contempt, *see Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996), such proceedings are considered quasi-criminal and require the courts to accord defendants many (although not all) of the constitutional rights that criminal defendants are ordinarily entitled to, including the requirement that their guilt be proved beyond a reasonable doubt. *Strunk v. Lewis Coal Corp.*, 547 S.W.2d 252, 254 (Tenn. Crim. App. 1976) *(*citing *Shiflet v. State*, 400 S.W.2d 542, 544 (Tenn. 1966)).

As Tenn. Code Ann. § 29-9-102(3) indicates, in order to find contempt under the statute the court must find the disobedience to the court's order to be willful. *Ahern v. Ahern,* 15 S.W.3d 73, 79 (Tenn. 2000). In the context of a child support case, criminal contempt may not be imposed upon an obligor if the party was unable to pay the court-ordered support.

The proof at the hearing in this case was very general in nature. Apparently, contempt was sought for payments due between October of 1995 and March of 2007. The State's records showed that Mr. Ralph had made payments, totaling $2,585, at various times. Mr. Ralph testified, in rough estimates, as to the times he was incarcerated, either on the basis of an arrest or as a result of a sentence.[5] The proof also showed that prior to his most recent period of incarceration, Mr. Ralph's only income was $156 per month in food stamps, that he was living in a car he did not own, and that he did not own any property.

In its brief, the State recognizes and properly identifies the problem with the contempt judgment herein, stating:

---

[4] A separate statute, Tenn. Code Ann. § 36-5-104, allows the arrest of any person who fails to comply with an order to provide support for a minor child, except that, "[n]o arrest warrant shall issue for the violation of any court order of support if such violation occurred during a period of time in which the obligor was incarcerated in any penal institution and was otherwise unable to comply with the order." Tenn. Code Ann. § 36-5-104(b).

[5] Questioning of Mr. Ralph elicited acknowledgments that he was incarcerated in 1995 and was released in "about 2000," that he was in jail between September of 2000 and April of 2001, that he returned to jail in August of 2001 and remained there until May of 2002, that he was also in jail from July of 2002 to January of 2006. Although the dates are somewhat imprecise, it is clear that except for a few relatively brief intervals, Mr. Ralph has been incarcerated most of the time between 1995 and the present.

-4-

To support a finding of contempt, the prosecution was required to prove beyond a reasonable doubt that Mr. Ralph had the ability to pay support at the time it was due showing that his failure to pay was willful. . . . [I]t is clear that the State failed to carry its burden in the trial court. . . . [T]he transcript of the contempt hearing does not support a finding of ability to pay when support became due or of willfulness required to sustain a contempt conviction. Unfortunately, there is no proof to establish that he had the ability to satisfy his child support obligation at the time it became due other than his admission that, through odd jobs, he was able to make sporadic payments.

The State conceded that the evidence was insufficient to prove willful failure to pay child support. In conformance with their professional obligations and ethical standards, the State's lawyers conclude, "Accordingly, the State cannot in good faith urge affirmance of the trial court's judgment."

We agree with the State's analysis of the law. *See Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2006); *Ahern*, 15 S.W.3d at 79. We also agree with the State's analysis of the record. Accordingly, we must vacate the trial court's finding of contempt and the sentence associated with it.

### III. CALCULATION OF CHILD SUPPORT ARREARAGE

Mr. Ralph also challenges the amount of child support arrearage assessed by the trial court. The trial court entered judgment for arrearages in the amount of $28,632. That amount was testified to by the State's witness as representing the total amount due from October 20, 1995, through March 31, 2007, after deducting payments actually made by Mr. Ralph.

Mr. Ralph first argues that he should not be required to pay child support during the time when he was incarcerated. He relies on this court's opinion in *Coates v. Coates*, No. M2001-01928-COA-R3-CV, 2002 WL 31528512, (Tenn. Ct. App. November 15, 2002) (no Tenn. R. App. P. 11 application filed). In that case, the trial court refused to reduce an incarcerated father's child support obligation on the basis of the reduction in income he experienced during his incarceration. We reversed, finding that there was a "significant variance" in his income justifying modification, and that his incarceration did not amount to "willful and voluntary unemployment or underemployment" which would preclude such modification. *See also Wilson v. Wilson,* 43 S.W.3d 495, 497 (Tenn. Ct. App. 2000) (holding that willful and voluntary unemployment must result from an intent to reduce income); *Pennington v. Pennington*, No. W2000-00568-COA-R3-CV, 2001 WL 277993 (Tenn. Ct. App. Mar. 14, 2001) (no Tenn. R. App. P. 11 application filed) (holding that unemployment resulting from incarceration is not willful and voluntary).

The *Coates* case involved modification of prospective child support. The present case involves calculation of arrearage for past support due. Because a court generally cannot retroactively modify a support order, Tenn. Code Ann. § 36-5-101(f) (1), ordinarily accrued arrearages cannot be reduced.

However, in the present case, Mr. Ralph filed a motion to reduce child support after he was jailed in 1996. For reasons that do not appear in the record, that motion was never ruled upon prior to the contempt hearing. A child support order may be modified, *i.e.*, the amount of support increased or decreased, retroactively to the date of a petition for modification. Tenn. Code Ann. § 36-5-101(f) (1).[6] In its order on the contempt petition, the trial court found that Mr. Ralph "shall remain responsible for any arrearages that have accumulated during periods of time where the Respondent was incarcerated and that the Motion filed by Bernard Smith on October 09, 1996 is thereby resolved." Stated another way, the court denied the motion.

We can only interpret the trial court's statements as a ruling on the 1996 motion after consideration of its merits. The record does not indicate that the State objected to the trial court's consideration of the motion. The conclusion reached by the court does not appear to be based on the evidence in light of the authorities cited above. Had the motion been heard when it was originally filed, and if the proof showed that Mr. Ralph had no income, downward modification of the amount of support would have been appropriate. The test for modification is whether there has been a "significant variance" between the amount due under the child support guidelines and the amount due under the support order currently in effect. Tenn. Code Ann. § 36-5-101(g)(1); *Turner v. Turner*, 919 S.W.2d 340, 342-3 (Tenn. Ct. App. 1995). Further, "upon application of either party, the court *shall* decree an increase or decrease of support" when a significant variance, as defined in the child support guidelines, is shown. Tenn. Code Ann. § 36-5-101(g)(1) (emphasis added).

Since the trial court was going to consider the merits of the motion, it was required to apply the statutory standard to the facts. Whether or not the 1996 motion met the requirements of Tenn. Code Ann. § 36-5-101(f)(1) so as to allow retroactive modification to the date of its filing was not addressed by the trial court, and no objection to it on the basis of those requirements was put forth by the State, even though the motion was raised in Mr. Ralph's answer.

We conclude that the arrearage judgment must be vacated. However, the trial court should be given the opportunity to determine whether it would be appropriate to reduce Mr. Ralph's child support obligation retroactively to the date of 1996 motion, and if so, to recalculate his arrearage accordingly. That will require, among other things, an inquiry into whether the motion meets the conditions for retroactive modification.[7]

Mr. Ralph also contends that he should be excused from paying child support even when he is not incarcerated. He argues that because of his criminal history, employers are not willing to hire him, and thus that it is impossible for him to make such payments. Again, the trial court cannot forgive past arrearages unless a motion to reduce child support was filed. The only such motion in

---

[6] "Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties." Tenn. Code Ann. § 36-5-101(f)(1).

[7] Even if the court should decide that the motion does not meet the statutory requirements, the court must consider whether the motion can be considered for prospective modification as of the date of the hearing since there all parties were aware of it by then and, if so, apply the appropriate standard for modification.

-6-

this case was the 1996 motion based on Mr. Ralph's incarceration. Accordingly, we find no basis for the trial court to reduce the arrearages for Mr. Ralph's past inability to find employment. That does not mean that Mr. Ralph could not file such a motion in the future, in which case the trial court would be required to apply the statutory and guidelines standards regarding significant variance and willful and voluntary unemployment or underemployment.[8]

Although we are aware that a retroactive downward modification to the date the motion was filed would raise issues regarding the support recipient's ability to have filed a motion for upward modification after Mr. Ralph's release from incarceration, we do not address those potential issues in the absence of a ruling that makes it necessary.

## IV.

The judgment of the trial court is vacated. We remand this case to the General Sessions Court of Warren County to determine if a recalculation of Mr. Ralph's child support arrearage is appropriate, to make such a recalculation if it is, and for any other proceedings necessary. Tax one half of the costs on appeal to the appellee, the State of Tennessee, and one half to the appellant, Lawrence Ralph.

_____
PATRICIA J. COTTRELL, JUDGE

---

[8] In other words, the trial court's interpretation of broad public policy would not suffice to replace the requirements of an individualized factual determination.