# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 20, 2021 Session

## HAL EUGENE HILL v. LIESA FRANCINE HILL

**Appeal from the Circuit Court for Bradley County**
**No. V-13-273        Lawrence H. Puckett, Judge**

_____

### No. E2019-02226-COA-R3-CV
_____

In this post-divorce action, the trial court awarded a judgment in the amount of $13,835.17 to the father, representing the mother's retroactive child support obligation. When calculating the mother's child support arrearage, the trial court declined to include the father's inheritance as income for child support calculation purposes because the father had used the majority of his inherited funds to pay private school tuition for the parties' two children. The court further awarded to the father attorney's fees and costs in the amount of $18,394.00 related to a previous child custody modification action. The mother has appealed. Discerning reversible error, we vacate the trial court's child support award and remand the child support issue to the trial court for further proceedings to determine whether a modification was warranted and if so, the appropriate amount of child support to be awarded pursuant to the Child Support Guidelines ("the Guidelines"). We also vacate the trial court's determination concerning civil contempt and remand that issue to the trial court as well. Although we affirm the trial court's decision to award reasonable attorney's fees and expenses to the father based on the trial court's previous child custody modification, we remand the issue of attorney's fees relative to child support enforcement to the trial court for further determination once child support has been set. We deny the mother's request for attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Philip M. Jacobs, Cleveland, Tennessee, for the appellant, Liesa Francine Hill.

Glenna M. Ramer, Chattanooga, Tennessee, for the appellee, Hal Eugene Hill.

**OPINION**

I. Factual and Procedural Background

Hal Eugene Hill ("Father") and Liesa Francine Hill ("Mother") were divorced by decree of the Bradley County Circuit Court ("trial court") on July 16, 2013. Two children were born of the parties' marriage, a son and a daughter. On January 30, 2015, Father filed a petition seeking modification of the parties' permanent parenting plan ("PPP"), which had been entered at the time of the divorce. Father claimed that a material change of circumstances had occurred since the divorce in that Mother had actively interfered with Father's co-parenting time. Father also asserted that Mother and the parties' son ("Son"), who was fifteen years of age at that time, had recently been involved in a "conflict" that prompted the involvement of law enforcement. According to Father, although no charges were ultimately filed, Son had been handcuffed and arrested. Father asserted that since that time, Mother had caused Son emotional distress concerning the incident and that Son had expressed a preference to live with Father. Father thus sought to be named primary residential parent for Son and requested that Son be placed primarily in his care. Father also sought a resultant modification of his child support obligation.

The trial court conducted a hearing on April 23, 2015, and heard testimony from Son, who testified in chambers, as well as both parties. The transcript of the court's ruling from this hearing indicates that Son expressed a preference to reside with Father because of alleged verbal and emotional abuse by Mother. The court stated that Son had acknowledged his wrongdoing concerning the physical altercation with Mother and had asked to be removed from that situation so that a similar event would not occur in the future. The court further noted that although Mother had accused Father of attempting to poison her, she did not exhibit fear of Father. The court stated that Father had denied any such action, and the court found Father to be credible in that regard. The court characterized Mother as "aggressive" based on her behavior exhibited in court. The trial court therefore determined that Mother presented a risk of substantial harm to Son and awarded primary custody of Son to Father.

On June 17, 2015, the trial court entered a written order providing that Father would be designated primary residential parent for Son. In turn, the court awarded to Mother co-parenting time with Son of two weekends per month to coincide with the weekends that the parties' daughter was with Mother. The court did not address Father's request for modification of his child support obligation and did not alter Mother's designation as primary custodian of the parties' daughter.

On March 2, 2017, Father filed another petition seeking modification of the parties' co-parenting schedule. Father claimed that Mother had continued to direct her anger toward Father to Son and that as a result, Son no longer wished to visit Mother.

Father proffered that Son would turn eighteen in November 2017. Father further asserted that it was in Son's best interest to discontinue his visits with Mother.

On March 13, 2017, Mother filed a motion seeking to modify the parties' co-parenting schedule and to have Father held in civil contempt. Mother asserted, *inter alia*, that Father had alienated Son from her, that Son was in trouble at school, that Son was using alcohol and tobacco while with Father, and that Son was engaged with his computer "virtually all night." Mother also averred that Father had failed to allow her to exercise her two weekends of co-parenting time per month with Son and had discontinued Son's counseling. Mother sought custody of both children and to be designated as primary residential parent for both. On April 5, 2017, Mother filed an answer and counter-petition in response to Father's modification petition, propounding the same allegations as in her March 2017 motion. Father subsequently filed an answer to Mother's counter-petition, denying Mother's allegations.

Following four continuances and a change of counsel for Mother, Mother filed another counter-petition on May 9, 2018, alleging that Father should be held in civil contempt; however, this petition focused upon Father's child support obligation. According to Mother's averments, Father had been ordered in 2014 to pay child support in the amount of $853.34 per month and had never been relieved of that financial responsibility. Mother sought to have Father held in contempt due to his failure to pay child support to her following the previous custody modification.

The trial court conducted a hearing on December 4, 2018. During the hearing, Father testified that when his mother passed away in 2014, he inherited certain real property and personalty, such that he received a distribution of $200,000.00 in 2014 and later acquired another lump sum distribution of $110,000.00 in addition to a small IRA and various other items of value.

In its subsequent written order entered on March 3, 2019, the trial court acknowledged that when it transferred custody of Son to Father via its June 2015 order, it had failed to address the issue of whether Father's child support obligation should be modified. The court determined that this transfer of custody constituted a material change in circumstance warranting a modification of child support.

The trial court stated that Mother had sought to have the court consider monies inherited by Father as income for child support calculation purposes. Furthermore, the court observed that the parties had entered into a mediated agreement on March 19, 2014, wherein Father agreed to pay the children's private school tuition in addition to the regular amount of child support. The court found that Father had inherited approximately $350,000.00 and that from 2015 through 2018, Father had utilized his inheritance to pay the children's collective private school tuition of $200,000.00. According to the court, although inherited funds are typically considered income for child support purposes, it

would be unjust to do so here because Father had expended the majority of those funds to pay additional child support in the form of private school tuition.

The trial court found that the parties' respective incomes for 2015 through 2018 were:

|      | Mother's income | Father's income |
|------|-----------------|-----------------|
| 2015 | $140,008.00     | $156,000.00     |
| 2016 | $138,000.00     | $164,039.00     |
| 2017 | $135,000.00     | $148,000.00     |
| 2018 | $135,000.00     | $148,000.00     |

The court concluded that Father should receive a retroactive award of child support from Mother due to the court's 2015 order transferring custody of Son to Father. The court therefore ordered the parties to submit child support worksheets for the years 2015 through 2018, reflecting the amount that would have been required of Father had his inheritance been included as income.

On November 19, 2019, the trial court entered an order granting a judgment to Father for Mother's retroactive child support obligation in the amount of $13,835.17. The court concluded that this amount would satisfy Mother's obligation through the date of the children's respective graduations from high school. Although Mother's request for attorney's fees was denied, the court awarded attorney's fees and expenses to Father, as related to the custody matter only, in the total amount of $18,394.00. Mother timely filed a notice of appeal.

On April 6, 2020, this Court entered a show cause order directing Mother to demonstrate that the trial court's judgment was final inasmuch as no child support worksheets were attached thereto and Mother's contempt claim had never been addressed. On September 29, 2020, the trial court entered an order following this Court's remand and adopted three child support worksheets as the basis for its award of retroactive child support to Father. The trial court entered a second order on that same date, denying Mother's contempt claim and explaining that Mother's motion for new trial had not been considered because this Court did not direct the trial court to address it following the notice of appeal's filing.

- 4 -

## II. Issues Presented

Mother presents the following issues for our review, which we have restated and reordered slightly:

1.  Whether the trial erred by declining to include in Father's income, for the purpose of calculating child support, the inheritance that Father received during the relevant timeframe.

2.  Whether the trial court erred by excluding Father's inheritance because he had used a portion of those funds to pay the children's private school tuition as he had previously agreed to do.

3.  Whether the trial court erred in granting relief to Father.

4.  Whether the trial court erred by denying Mother's counter-petition for civil contempt based on Father's failure to pay his ordered amount of child support.

5.  Whether the trial court erred by awarding attorney's fees to Father and by denying Mother's request for attorney fees.

6.  Whether Mother is entitled to attorney's fees on appeal.

## III. Standard of Review

Determinations regarding child support are reviewed under an abuse of discretion standard. *See Mayfield v. Mayfield*, 395 S.W.3d 108, 114-15 (Tenn. 2012); *State ex rel. Williams v. Woods*, 530 S.W.3d 129, 136 (Tenn. Ct. App. 2017). As this Court has explained:

> Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).

* * *

Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

*Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

Regarding adherence to the Guidelines, this Court has explained:

In Tennessee, awards of child support are governed by the Child Support Guidelines ("the Guidelines") promulgated by the Tennessee Department of Human Services Child Support Services Division. Tenn. Code Ann. § 36-5-101(e)(2). Tennessee's Child Support Guidelines have the force of law. *Jahn v. Jahn,* 932 S.W.2d 939, 943 (Tenn. Ct. App. 1996). Statutes and regulations pertaining to child support are intended to "assure that children receive support reasonably consistent with their parent or parents' financial resources." *State ex rel. Vaughn v. Kaatrude,* 21 S.W.3d 244, 248-49 (Tenn. Ct. App. 2000); *see also* Tenn. Comp. R. & Regs. 1240-02-04-.01(3)(e). Courts are therefore required to use the child support guidelines "to promote both efficient child support proceedings and dependable, consistent child support awards." *Kaatrude,* 21 S.W.3d at 249; *see also*

Tenn. Code Ann. § 36-5-101(e); Tenn. Comp. R. & Regs. 1240-02-04-.01(3)(b), (c).

*Williams*, 530 S.W.3d at 137 (quoting *Sykes v. Sykes*, No. M2012-01146-COA-R3-CV, 2013 WL 4714369, at *2 (Tenn. Ct. App. Aug. 28, 2013) (footnote omitted in *Williams*)).

## IV. Child Support and Inheritance

Mother argues that the trial court erred by declining to include in the Father's income, for the purpose of calculating child support, the inheritance that Father received in 2014 and 2015. Mother also contends that the trial court should have included Father's inherited funds as income despite the fact that Father had used part of those funds to pay for the children's private school expenses. Father counters that the trial court had discretion concerning its decision of whether to include the inherited funds as income and that such discretion was not abused in this matter.

Concerning the issue of whether inheritance can be considered and included as income for the purpose of setting child support, as this Court recognized in *Wadhwani v. White*, No. M2015-01447-COA-R3-CV, 2016 WL 4579192, at *17 (Tenn. Ct. App. Aug. 31, 2016):

> The Child Support Guidelines define gross income as including "all income from any source . . . whether earned or unearned." Tenn. Comp. R. & Regs. 1240-02-04-.04. Gross income specifically includes such "one-time" distributions as prizes, lottery winnings, and gifts that can be converted to cash. *Id.* Ergo, this Court has previously determined that "money received by inheritance can be considered as income under the guidelines." *Ford v. Ford*, No. 01A01-9611-CV-00536, 1998 WL 730201, at *4 (Tenn. Ct. App. Oct. 21, 1998). Courts should, however, "focus on 'income regularly received by the obligor.'" *Id.* (quoting *Whisenhunt v. Whisenhunt*, No. 02A01-9506-CV-00126, 1997 WL 305296, at *3 (Tenn. Ct. App. June 9, 1997)).

The *Wadhwani* Court accordingly determined that the trial court did not abuse its discretion in considering the father's inheritance as income. *See id*; *see also Hommerding v. Hommerding*, No. M2008-00672-COA-R3-CV, 2009 WL 1684681, at *4 (Tenn. Ct. App. June 15, 2009) ("[I]t is within the court's discretion whether to include the cash assets from an inheritance as part of the non-custodial parent's income."). The *Wadhwani* Court further determined that the trial court did not abuse its discretion in averaging the father's inheritance over a period of ten years rather than counting it as income only in the year it was received, concluding:

To have counted this entire sum as income for one year would have produced a falsely elevated child support award, which Father would likely be unable to maintain once the inherited funds were depleted. We determine the trial court's approach of dividing the total sum over a ten-year period to be fair and equitable.

*Wadhwani*, 2016 WL 4579192, at *17.

In *Wadhwani*, we relied upon this Court's earlier decision in *Ford v. Ford*, No. 01A01-9611-CV-00536, 1998 WL 730201 (Tenn. Ct. App. Oct. 21, 1998). The *Ford* Court stated in pertinent part:

Determining the obligor parent's income is an indispensable part of every child support proceeding. *See Turner v. Turner*, 919 S.W.2d 340, 344 (Tenn. Ct. App. 1995). Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)(a) defines "gross income" to include "all income from any source . . . whether earned or unearned." Thus, money received by inheritance can be considered as income under the guidelines. *See Lescher v. Lescher*, 679 S.W.2d 463, 465-66 (Tenn. Ct. App. 1984); *see also In re Marriage of Armstrong*, 831 P.2d 501, 503 (Colo. Ct. App. 1992); *Connell v. Connell*, 313 N.J. Super. 426, 712 A.2d 1266, 1269 (N.J. Super. Ct. App. Div. 1998). Accordingly, we hold that the trial court correctly considered all the funds Mr. Ford received from the Betty J. Ford Testamentary Trust in determining Mr. Ford's child support obligation.

However, inheritance, like other income, can sometimes come to a recipient over a span of time. That matters, because courts setting child support ordinarily look not so much to the source of the income—whether inheritance, wages, or lottery winnings—as they look to the dependability of its continued receipt. *See, e.g. Crayton v. Crayton*, 944 P.2d 487, 490 (Alaska 1997) (ordering a trial court in setting child support to consider as income money given by a father to his obligor daughter where it was undisputed that the cash gifts would continue through time).

Courts should be wary of increasing child support based on possible income that is merely speculative. *See Whisenhurst v. Whisenhurst*, No. 02A01-9506-CV00126, 1997 WL 305296, at *3 (Tenn. Ct. App. June 9, 1997) (No Tenn. R. App. P. 11 application filed). Instead, they should focus on "income regularly received by the obligor." *See Whisenhurst v. Whisenhurst*, 1997 WL 305296, at *3; *see, e.g., Smith v. Smith*, No. 01A01-9705-CH-00216, 1997 WL 672646, at *3 (Tenn. Ct. App. Oct. 29, 1997) (No Tenn. R. App. P. 11 application filed) (allowing courts to consider capital gains from exercised stock options where there is no indication that

such stock options to the obligor will cease); *Moore v. Youngquist*, No. 01A01-9012-CH-00433, 1991 WL 57982, at *1 (Tenn. Ct. App. April 19, 1991) (No Tenn. R. App. P. 11 application filed) (holding that lottery winnings paid to the lottery winner regularly over time should be considered income for purposes of determining child support).

1998 WL 730201, at *4. *See, e.g., Smith v. Smith*, No. M2003-02033-COA-R3-CV, 2005 WL 1384896, at *10 (Tenn. Ct. App. June 10, 2005) (affirming the trial court's decision to "calculate child support by using [the father's] net inheritance remaining . . . as a basis for imputing future investment income and calculating child support.").

In the case at bar, the trial court recognized in its March 2019 order: "Generally a parent's inheritance that increases the parent's standard of living should be considered as income under the guidelines," citing *Wadhwani*, 2016 WL 4579192, at *17. The court further stated that based on precedent from this Court, "the Court must treat Father's inheritance as 'presumptive' income to him under the guidelines." We agree with the trial court's analysis in this respect.

However, the trial court proceeded to explain its rationale:

When a court deviates from "presumptive" guideline support, the guidelines require the court to make certain findings:

(c)     When ordering a deviation from the presumptive amount of child support established by the Guidelines, the tribunal's order shall contain written findings of fact stating:

1.     The reasons for the change or deviation from the presumptive amount of child support that would have been paid pursuant to the Guidelines; and

2.     The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and

3.     How, in its determination,

(i)     Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and

(ii)     The best interests of the child for whom support is being determined will be served by deviation from the presumptive guideline amount.

Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(c) (2008).

A Court deviating from "presumptive guideline support" . . . "shall consider all available income of the parents,"

. . . and shall make a written finding that an amount of child support other than the amount calculated under the Guidelines is reasonably necessary to provide for the needs of the minor child or children for whom support is being determined in the case immediately under consideration.

Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(a) (2008).

The trial court subsequently reviewed the applicable law relating to extraordinary educational expenses, determining that Father's payment of private school tuition constituted an upward deviation pursuant to the Guidelines. The court ultimately concluded:

[I]t would be unjust and inappropriate to include Father's inheritance income as part of his income for purposes of calculating child support since he used it to pay private school tuition and the inheritance did not increase his standard of living above that of the children, rather, it went directly to support their higher standard of living. Father's use of the inheritance did not deprive the children of support. To further increase Father's child support obligation by adding to his income (under the guideline support calculation) sums which Father spent on extraordinary educational expenses would be an inappropriate and unjust application of the guidelines—a true "double dip" into the same income pool.

* * *

The Court finds it is in the children's best interest that Father pay their extraordinary educational expenses and that the deviation from presumptive income from his inheritance be ordered subject to worksheets to be filed as late filed exhibits to this order. (As required by Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(c)2, to reflect the amount of Father's presumptive support if his Three hundred fifty thousand dollar ($350,000.00) inheritance were spread over all the years since he received it.)

- 10 -

Upon our thorough review, we find error with the trial court's analysis respecting this approach.

In its March 2019 order, the trial court initially concluded that it "must treat Father's inheritance as 'presumptive' income to him under the guidelines." Later in the same order, however, the court declined to include Father's inheritance as income for the purposes of calculating guideline child support because Father had voluntarily paid additional support in the form of private school tuition, constituting extraordinary educational expenses. The trial court then directed the parties to file child support worksheets "reflect[ing] the amount of Father's presumptive support if his Three hundred fifty thousand dollar ($350,000.00) inheritance were spread over all the years since he received it," so that "the deviation from presumptive income from his inheritance" could be addressed.[1] Respectfully, the trial court's methodology utilized in its calculation of child support is not in accordance with the directives of the Guidelines.

As this Court has elucidated:

> Child support, including any modification of support, is governed by statute. Tennessee Code Annotated § 36-5-101(g) governs modification. *Kaplan v. Bugalla*, 188 S.W.3d 632, 636 (Tenn. 2006); *Wine v. Wine*, 245 S.W.3d 389, 393 (Tenn. Ct. App. 2007). In an action to modify an existing support order, the initial inquiry is "whether there is a 'significant variance' between the current obligation and the obligation set by the Guidelines." *Wine v. Wine*, 245 S.W.3d at 394.

*Murphy v. State Child Support Servs.*, No. M2012-02514-COA-R3-JV, 2014 WL 1715092, at *4 (Tenn. Ct. App. Apr. 29, 2014).

Accordingly, the trial court was first tasked to ascertain whether there was a significant variance of "at least [a] fifteen percent (15%) difference in the current support obligation and the proposed support obligation" before modification was appropriate. *See* Tenn. Comp. R. & Regs. 1240-02-04-.05(2)(a), (b); *see also* Tenn. Code Ann. § 36-5-101(g)(1) (2021) ("Upon application of either party, the court shall decree an increase or decrease of support when there is found to be a significant variance[.]"). "An order may be modified to reflect a change in the number of children for whom a parent is legally responsible, a Parenting Time Adjustment, and Work-Related Childcare only upon compliance with the significant variance requirement specified in Rule 1240-02-04-.05." Tenn. Comp. R. & Regs. 1240-02-04-.05(7) (emphasis added). Furthermore, Father, as the parent seeking to modify the child support obligation, would have the

---

[1] We note that these worksheets do not appear in the appellate record. The trial court later adopted worksheets seemingly reflecting an income for Father in accordance with his tax returns and not including his inheritance as income.

- 11 -

burden of proving that a significant variance existed.  *See Tigart v. Tigart*, No. M2020-01146-COA-R3-CV, 2021 WL 4352539, at \*4 (Tenn. Ct. App. Sept. 24, 2021).

To determine whether a significant variance existed, the trial court maintained the responsibility of calculating guideline child support utilizing the child support worksheets, pursuant to Tenn. Comp. R. & Regs. 1240-02-04-.04, and "current evidence of the parties' circumstances."  *See* Tenn. Comp. R. & Regs. 1240-02-04-.05(3); *see also Murphy*, 2014 WL 1715092, at \*6 ("The Guidelines mandate the use of Worksheets promulgated by the Department and the maintenance of the completed Worksheets 'as exhibits in the tribunal's files or as attachments to the order.'").  In calculating guideline child support, the court initially would be required to determine the parents' respective gross incomes, as explained previously.  *See Smith*, 2005 WL 1384896, at \*10.  The court should incorporate its findings concerning the parents' gross incomes into the worksheet, along with the number of co-parenting days awarded to each parent.  *See* Tenn. Comp. R. & Regs. 1240-02-04-.04.  Finally, the court should make adjustments for allowed additional expenses, such as health insurance premiums and work-related child care expenses.  *See id*; *see also Baker v. Baker*, No. M2020-00374-COA-R3-CV, 2021 WL 287845, at \*3 (Tenn. Ct. App. Jan. 28, 2021).

Following these delineated steps results in the calculation of a current presumptive child support order.  *See id*.  When comparing the previously ordered child support to the current presumptive child support amount for the purpose of determining whether a significant variance exists, the court must "not include the amount of any previously ordered deviations or proposed deviations in the comparison."  *See* Tenn. Comp. R. & Regs. 1240-02-04-.05(4); *see also Tigart*, 2021 WL 4352539, at \*4.

If a significant variance were found to exist and modification to be appropriate, then, only after the current presumptive child support amount was calculated as explained above, the trial court would consider whether any type of deviation was warranted.  *See* Tenn. Comp. R. & Regs. 1240-02-04-.07(1)(b) ("The tribunal may order as a deviation an amount of support different from the amount of the presumptive child support order if the deviation complies with the requirements of this paragraph (1) and with this chapter.").  This is the juncture in the analysis when the trial court should make appropriate findings of fact regarding the reasons for the deviation, the "amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted," whether application of the guidelines would be unjust, and whether the child's best interest will be served by the deviation.  Tenn. Comp. R. & Regs. 1240-02-04-.07(1)(c).[2]

---

[2] In cases such as the one at bar when the child support in question is being awarded retroactively, the trial court should also take note of the instructions contained in Tenn. Comp. R. & Regs. 1240-02-04-.06(4) concerning retroactive support with regard to averaging parents' incomes and calculating the judgment based on the number of months in the appropriate period.

In the present action, the trial court failed to determine whether a significant variance existed such that modification of the existing child support order was warranted. The trial court also failed to determine the amount of the current presumptive child support order, a step necessary to the determination of whether a significant variance existed, before concluding that a deviation was warranted. As such, the trial court failed to incorporate the appropriate process set forth by the Guidelines. Moreover, the worksheets ultimately adopted by the trial court do not correspond with the court's earlier determination that Father's inheritance income should have been included when calculating the presumptive child support amount. Rather, the worksheets adopted by the court appear to reflect an income for Father in accordance with his tax returns and do not include his inheritance. As such, the appellate record does not support the trial court's ultimate modification of the parties' child support order.

We note that Mother has posited in her appellate brief that the trial court was prohibited from granting Father a modification of child support because Father had intentionally failed to pay the previously ordered support for a period of time. According to Mother, the "[Guidelines] provide that an intentional act of a party limits a court from granting a modification of current support order." Mother provides no authority for this statement, however, and we have been unable to locate any such provision in the Guidelines. We note that Mother petitioned the trial court for a finding of civil contempt concerning Father, and we conclude that her arguments concerning Father's failure to pay support are best addressed with regard to her contempt claim, which will be reviewed in the following section of this Opinion.

In conclusion, for the foregoing reasons, the trial court's child support award must be vacated and the case remanded to the trial court for further proceedings to determine whether a modification of child support was warranted and if so, the appropriate amount of child support to be awarded based on the Guidelines. If a modification is found to be warranted, when calculating the appropriate amount of child support to be awarded, the amount of the presumptive child support order must be calculated by the court before making a determination of whether deviation is appropriate.

V. Contempt of Court

Mother contends that the trial court erred by denying her counter-petition for civil contempt. Mother asserts that Father should have been found in civil contempt for his failure to pay child support as previously ordered for the period spanning April 23, 2015, to December 4, 2018. Father argues in response that the trial court's decision was correct because Father had custody of Son during that time period and because the trial court ultimately determined Mother owed child support to Father retroactively to the date of filing his petition to modify in 2015.

- 13 -

The trial court, in relevant part, stated in its September 2020 order:

> The Court's final order satisfied any alleged arrears claimed to be owed by [Father] to [Mother] in her Counter Petition for Contempt, therefore a "finding of contempt would serve no purpose." *Luplow vs. Luplow*, 450 S.W.3d 105, 119 (Tenn. Ct. App. 2014). [Father] had nothing left to perform for a child support obligation for the months in question and in effect, though he was never found to be in contempt, he purged himself of any civil contempt because he was awarded a judgment for unpaid child support from and after the temporary hearing in 2015 through the trial in this matter. The Court specifically overrules the Petition for Contempt as it was subsumed by the Petition for Modification filed by [Father].

We agree with the trial court's reasoning in this regard. As this Court has previously explained:

> Punishment in civil contempt actions "is designed to coerce compliance with the court's order." *Doe v. Bd. of Prof'l Responsibility of Supreme Court of Tennessee*, 104 S.W.3d 465, 473 (Tenn. 2003). In civil contempt proceedings, "the one in contempt has the 'keys to the jail' and can purge the contempt by complying with the court's order." *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000) (citing Tenn. Code Ann. § 29-9-104; *Garrett v. Forest Lawn Mem'l Gardens, Inc.*, 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979)); *see also Self v. Self*, No. M2014-02295-COA-R3-CV, 2015 WL 5610657, at *1 (Tenn. Ct. App. Sept. 23, 2015) ("The court ruled that Father was not in civil contempt because he had cured his contemptuous conduct and we find no error with the contempt ruling.").

*Abney v. Pace*, No. M2020-00182-COA-R3-CV, 2021 WL 3877763, at *7 (Tenn. Ct. App. Aug. 31, 2021). Based on its determination that Father did not owe child support to Mother for the time period in question, the trial court was within its discretion in determining that Father should not be held in civil contempt. *See, e.g., Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

Having determined that the trial court's findings and conclusions concerning child support must be vacated, however, and because the trial court's determination concerning civil contempt was predicated in large measure on those findings and conclusions, we must accordingly vacate the court's determination regarding contempt as well. If, upon remand, the trial court is unable to determine that a modification of child support is warranted, the court may be compelled to revisit the issue of civil contempt.

Father postulates that Mother has waived this issue by failing to testify at trial. Father has cited no authority for this position. As our Supreme Court has previously explained concerning civil contempt:

> Civil contempt claims based upon an alleged disobedience of a court order have four essential elements. First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Konvalinka*, 249 S.W.3d at 354-55 (footnotes omitted). Although Mother would have the burden of proving each of these elements, we have been presented with no reason that she would be required to testify in order to do so. We therefore conclude that this contention is without merit.

## VI. Attorney's Fees

### A. Attorney's Fees Awarded in the Trial Court

Mother asserts that the trial court erred in awarding attorney's fees to Father and denying her request for attorney's fees. Mother posits that because she was the party seeking to enforce the trial court's previous child support order, she was due an award of attorney's fees, pursuant to Tennessee Code Annotated § 36-5-103(c), and Father was not. Father contends that the trial court's award of attorney's fees was not based on its modification of the prior child support award. Rather, Father asserts that the trial court awarded fees relative to the modification of child custody in 2015. Following our careful review of the appellate record, we agree with Father.

The trial court's November 2019 order specifically states that "[Father's] Motion for Attorney Fees is granted with regard to the custody matters only." The trial court awarded attorney's fees and expenses to Father in the total amount of $18,394.00. An affidavit from Father's counsel is attached to the November 2019 order, substantiating this amount and clarifying that the fees and expenses claimed were related solely to the custody modification action. We therefore conclude that Mother's contentions regarding the fees and expenses awarded to Father are unavailing.

Concerning Mother's argument that she was entitled to an award of fees at trial pursuant to Tennessee Code Annotated § 36-5-103(c) (2017), we note that the version of this statutory section in effect when the modification petition was filed provides that the "plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child

- 15 -

support . . . ."[3] This statutory provision has been interpreted as authorizing a trial court to award attorney's fees incurred in an action to modify child support. *See Wiser v. Wiser*, 339 S.W.3d 1, 20 (Tenn. Ct. App. 2010); *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001) (interpreting the statute as giving courts authority to award fees in child support modification cases generally); *Williams v. Williams*, No. E2004-00423-COA-R3-CV, 2005 WL 1219955, at *9 (Tenn. Ct. App. May 24, 2005) (concluding that the parent who successfully sought an increase in child support "was entitled to recover such reasonable attorney fees as were fixed and allowed by the Trial Court in its discretion").

Such an award of attorney's fees is within the trial court's discretion. *See Huntley*, 61 S.W.3d at 341. As our Supreme Court has explained:

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (internal citations omitted).

The trial court denied Mother's request for an award of attorney's fees, presumably based on the fact that the court had neither enforced Father's support obligation nor increased it as a result of Mother's petition. Instead, the trial court determined that Mother owed child support to Father retroactive to the date of filing of Father's modification petition in 2015. Having concluded that the trial court's determination concerning child support must be vacated and remanded, however, we remand the issue of attorney's fees concerning child support enforcement to the trial court as well.

---

[3] Effective May 3, 2018, the General Assembly has amended Tennessee Code Annotated § 36-5-103(c) to substitute the following language in place of the previous subsection:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

*See* 2018 Tenn. Pub. Acts, Ch. 905, § 1 (H.B. 2526).

B. Attorney's Fees on Appeal

Finally, Mother urges that she is entitled to an award of attorney's fees on appeal because the appeal represents a continuation of her efforts to enforce the child support order. We reiterate that inasmuch as the trial court's determination concerning child support must be vacated, we have no basis upon which to conclude that Mother would be entitled to an award of attorney's fees for enforcing Father's child support obligation at this time. We therefore decline to award attorney's fees to Mother on appeal pursuant to Tennessee Code Annotated § 36-5-103(c).

VII. Remaining Arguments

In the argument section of his appellate brief, Father purports to raise additional issues related to the trial court's findings concerning Father's income and the allocation of private school tuition. We note, however, that Father failed to raise these issues in his statement of the issues. Inasmuch as issues not raised in the statement of the issues may be considered waived, we decline to address Father's additional arguments. *See Ethridge v. Estate of Ethridge*, 427 S.W.3d 389, 395 (Tenn. Ct. App. 2013) ("Issues not raised in the statement of the issues may be considered waived.").

VIII. Conclusion

For the foregoing reasons, we vacate the trial court's child support award and remand the child support issue to the trial court for further proceedings to determine whether a modification of child support was warranted and if so, the appropriate amount of child support to be awarded pursuant to the Guidelines. We also vacate the trial court's determination concerning civil contempt and remand that issue to the trial court as well. Although we affirm the trial court's decision to award attorney's fees and expenses to Father based on the trial court's previous child custody modification, we remand the issue of attorney's fees with regard to child support enforcement to the trial court for further determination after child support has been set. We deny Mother's request for attorney's fees on appeal. Costs on appeal are assessed one-half to the appellant, Liesa Francine Hill, and one-half to the appellee, Hal Eugene Hill.

s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE

- 17 -